# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 95-CA-00133-SCT

*MISSISSIPPI GAMING COMMISSION; W. W. GRESHAM, CHAIRMAN; VICTOR SMITH, COMMISSIONER; ROBERT ENGRAM, COMMISSIONER; MAJOR GENERAL PAUL HARVEY, EXECUTIVE DIRECTOR; AND MIKE MOORE, ATTORNEY GENERAL*

*v.*

*BOARD OF EDUCATION, HARRISON COUNTY, MISSISSIPPI AND ROYAL CASINO CORPORATION*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/30/94 |
| TRIAL JUDGE: | HON. JAMES E. THOMAS |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANTS: | OFFICE OF THE ATTORNEY GENERAL |
| | BY:  M. CAROLE BRAND |
| ATTORNEYS FOR APPELLEES: | ALBEN N. HOPKINS |
| | JAMES B. PERSONS |
| | THOMAS A. WALLER |
| | ALBERT LIONEL NECAISE |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES (OTHER THAN WORKER'S COMPENSATION) |
| DISPOSITION: | REVERSED AND COMMISSION'S DECISION REINSTATED - 3/20/97 |
| MOTION FOR REHEARING FILED: | 4/3/97 |
| MANDATE ISSUED: | 5/29/97 |

**BEFORE PRATHER, P.J., BANKS AND McRAE, JJ.**

**McRAE, JUSTICE, FOR THE COURT:**

¶1. The Mississippi Gaming Commission files an appeal from a December 30, 1994 order of the Harrison County Circuit Court finding arbitrary, capricious, and unsupported by the evidence or applicable law its determination that Sixteenth Section land located on Bernard Bayou in Gulfport,

Mississippi, which Royal Casino sought to develop, was not a legal gambling site. Aggrieved by the circuit court's ruling, the Commission now asks this Court to consider: (1) whether there is a right to appeal the denial of a preliminary site approval, a licensing decision of the Mississippi Gaming Commission; (2) whether it acted in excess of its statutory authority in denying the preliminary site approval to Royal Casino; (3) whether its finding of fact that Bernard Bayou is a bayou and therefore not a suitable site for gaming operations was arbitrary and capricious; and (4) whether the Board, which was not the license applicant, has standing to appeal a licensing decision made by the Commission.

¶2. We find that the circuit court had jurisdiction to entertain Royal Casino's appeal of the Commission's denial of its preliminary site request and that the Board of Education was a proper party to the action. We further find that the circuit court erred in ruling that the Commission exceeded its authority in determining that Bernard Bayou was not a proper gaming site and that denial of the preliminary site approval was arbitrary, capricious and unsupported by the evidence. Accordingly, we reverse the order of the circuit court and reinstate the Commission's decision.

I.

¶3. Royal Casino Corporation, headquartered in Rochester, New York, leased a parcel of Sixteenth Section land from the Board of Education of Harrison County. On April 20, 1993, Royal Casino filed its Application for State Gaming License with the State Gaming Commission, with the intent of constructing a gaming facility on the 125 acre site. Touted as "The Gateway to the Gulf Coast," the proposed development would include two casinos and a shopping mall. It was estimated that the $300 million project would create eight thousand new jobs and generate $24 million in sales tax and annual gaming taxes of approximately $326 million. The Board anticipated some $180 million in rental revenues over the forty year term of the lease.

¶4. The proposed Royal Casino site is located northeast of the intersection of Interstate 10 and U.S. Highway 49 on Bernard Bayou. Bernard Bayou meanders for more than two miles to the west and north toward the interstate from Big Lake, which is located at the far western end of the Back Bay of Biloxi. Variously described as a bayou and as an estuary, the site experiences some effect from the ebb and flow of the average tide.

¶5. A site assessment hearing was held on April 21, 1994. The Gaming Commission was presented with expert affidavits and testimony regarding the hydrographic properties of the site. Proponents and opponents of the site discussed the economic and social impact of the project. Based on this evidence, maps, a site visit, and the statutes and regulations governing gaming sites, the Commission's Executive Director recommended against approval of the Bernard Bayou site, as reflected in the minutes of the April 21, 1994 site assessment hearing.

> Based upon a physical inspection of the site, maps depicting the site and adjacent development, presentations by both the proponents and opponents of the site, a review of statutory and regulatory provisions relating to suitable locations for gaming operations, following commission past practice and directives codified at Mississippi Gaming Commission Regulation No. 2, it is the recommendation of the Executive Director that preliminary site approval be denied. Substantial, if not overwhelming evidence shows the Bernard Bayou site to be located on a bayou. *It cannot credibly be defined as a permissible extension of the waters of the Mississippi*

*Sound, St. Louis Bay, Biloxi Bay, or Pascagoula Bay.* Bernard Bayou is not a suitable site allowed by state law or the Mississippi Gaming Commission Regulation No. 2. The site, if approved, could and would open the State of Mississippi to inland land-based casino gaming. In order to promote and maintain public confidence and trust in gaming, the Commission intends to strictly regulate the location of gaming operations in Mississippi. In the recognition of public interest in restricting gaming to the waters of the Mississippi Sound, Biloxi Bay and St. Louis Bay, and being consistent with past practice, the Gaming Commission will not recommend sites that are located on tributaries emptying into those waters.

(emphasis added). The Director's recommendation was accepted by a 2-1 vote at the May 31, 1994 Special Interim Commission Meeting.

¶6. The Board of Education of Harrison County and Royal Casino Corporation filed a Petition for Review with the Harrison County Circuit Court on July 18, 1994. The petitioners charged that neither state statutes nor Commission Regulation No. 2 prohibited gaming operations on the proposed site.[1] In the alternative, they argued that if Regulation No. 2 were found to bar development of the site, it should be declared void and in violation of Miss. Code Ann. § 97-33-1 (1993). Keeping all avenues open, they further argued, in the alternative, that § 97-33-1 was unintelligible and unconstitutional.

¶7. In response, the Gaming Commission asserted that the circuit court lacked jurisdiction over the matter because preliminary site approval is not statutorily subject to appeal. The Commission sought to dismiss the complaint against the Commissioners as charged in their individual capacities. It further asserted that the Board of Education of Harrison County, which had not filed the application for site approval, was not a proper party to the case. In its July 28, 1994 Motion to Dismiss Petition for Review, the Commission specifically asserted that the site decision, the initial phase of a licensing decision, was not subject to judicial review pursuant to Miss. Code Ann. § 75-76-127(2). The Commission, in a separate Motion to Dismiss a Party to Petition for Review, sought to dismiss the Board from the appeal, again arguing that it did not have standing.

¶8. A hearing was held on November 21, 1994. On December 30, 1994, the circuit court entered its opinion, reversing the Commission's order and finding that Bernard Bayou was "a lawful and legal site" for a casino. The circuit court further denied the Commission's motion to dismiss the Board of Education as a party and dismissed the action against the Commissioners and the Executive Director in their individual capacities.

## II.

¶9. This Court affords great deference to an administrative agency in interpreting its own regulations. *Casino Magic Corp. v. Ladner,* 666 So. 2d 452, 463 (Miss. 1995)(Banks, J., concurring); *Mississippi Department of Environmental Quality v. Weems,* 653 So. 2d 266, 273 (Miss. 1995). This deference will be of "no material force where agency action is contrary to the statutory language." *Casino Magic,* 666 So. 2d at 459 (quoting *Gill v. Department of Wildlife Conservation,* 574 So. 2d 586, 593 (Miss. 1990)). *See also Mississippi Casino Operator's Ass'n v. Mississippi Gaming Commission,* 654 So. 2d 892, 894 (Miss. 1995). When reviewing decisions of the Mississippi Gaming Commission, the circuit courts and Supreme Court may reverse a Commission order if the petitioner's rights were prejudiced because the decision was "(a) [i]n violation of

constitutional provisions; (b) [i]n excess of statutory authority or jurisdiction of the commission; (c) [m]ade upon unlawful procedure; (d) [u]nsupported by any evidence; or (e) [a]rbitrary or capricious or otherwise not in accordance with law." Miss. Code Ann. § 75-76-125(3)(1990).

## III.

¶10. The circuit court ruled that it had jurisdiction over the appeal of the Commission's denial of the preliminary site request pursuant to Miss. Code Ann. § 75-76-121(1)(1990) of the Gaming Control Act, which provides that "[a]ny person aggrieved by a final decision or order of the commission may obtain judicial review thereof in the circuit court of the county in which the petitioner resides or has his or its principal place of business." In support of its assertion that the denial of Royal Casino's request for preliminary site approval is not subject to judicial review, the Commission relies on the statutory framework from which it derives its authority as well as this Court's decision in *Casino Magic Corp. v. Ladner,* 666 So. 2d 452 (Miss. 1995). These authorities exclude licensing decisions from the spectrum of Commission business subject to appeal and judicial review, based on the premise that a license is but a revocable privilege and not a right. Miss. Code Ann. § 75-76-3(5) (1990).

¶11. Miss. Code Ann. § 75-76-127(2)(1990) expressly states that "[j]udicial review is not available for actions, decisions, and orders of the commission relating to the denial of a license or to limited or conditional licenses." In *Casino Magic,* this Court likewise was faced with the issue of whether the circuit court had jurisdiction to hear a property owner's challenge to the Commission's finding that a proposed casino site was not a lawful site. The Court, following an extensive discussion of the applicable statutes, found that "the Mississippi Gaming Act prohibits the ability to appeal an action, decision, or order relating to the denial of a license, which we find includes preliminary site approval." *Casino Magic,* 666 So. 2d at 458.

¶12. The *Casino Magic* decision, however, was careful to not shut the door on aggrieved property owners or license applicants, or to give the Commission *carte blanche* in its decision-making powers. Rather, recognizing that the Commission could not deny site approval for proper, legal areas, or in the alternative, approve sites in areas not legally designated for casino development, we found that "unless the MGC acts outside its statutory boundaries . . . denial of a site and license request is *generally* not reviewable." *Id.* at 460 (emphasis in original). We further stated:

> We find that property owners in Mississippi do not have a statutory right to appeal a site request denial of the MGC *so long as* the MGC acts within its statutory framework as it did here. However, the MGC does *not* enjoy plenary power incapable of judicial review under *all* circumstances.

*Id.* at 456 (emphasis in original). Thus, finding that the Commission had not exceeded its statutory authority in determining that the Ladner property was located on a bayou and thus not suitable as a gaming site, we held that the circuit court had no jurisdiction over the matter.

¶13. In *Mississippi Casino Operators v. Mississippi Gaming Commission,* 654 So. 2d 892 (Miss. 1995), we reversed the Commission's decision to grant a license for a gaming site on a proposed man-made waterway. The Casino Operators, like Royal Casino and the Board, had invoked the circuit court's jurisdiction pursuant to Miss. Code Ann. § 75-76-121. We pointed out that the

language of Miss. Code Ann. § 75-76-127(2) stating that judicial review was not available "for actions, decisions and orders of the commission relating to the denial of a license" was construed as follows:

> Section 75-76-127 makes the statutory appeal scheme exclusive for disciplinary actions and *denies any appeal from the denial or limitation of a license. That section does not speak to the grant of a license and we have not found a section which explicitly grants or denies appellate review of such orders.* For present purposes, it should suffice to say that we accept the commission's interpretation that judicial review of its decisions granting licenses or approving sites is authorized by Section 75-76-121.

*Casino Operators,* 654 So. 2d  893 n. 1 (emphasis added). Therefore, while the circuit court may entertain the appeal of any decision to *grant* a license, appeal of a decision to *deny* any aspect of a license is subject to an "in excess of statutory authority" test.

¶14. Justice Banks, in his separate opinion in *Casino Magic*, articulated the obvious question raised by the conditional limitations placed by the majority on the judicial review of Commission licensing. He interpreted the majority opinion as stating

> in essence, that the trial court lacks jurisdiction to hear an appeal of this type, except when the Mississippi Gaming Commission acts contrary to its statutory authority. *A court must first have the right of review in order to make that determination.* A question of statutory authority goes to the merits of the controversy and is always at issue [i]n the review of administrative decisions. The right to review cannot, in my view, come from the determination itself.

*Id.* at 460 (emphasis added). If judicial review is available only when the Commission has exceeded its statutory authority in *denying* a license, or when a decision has been made to *grant* a gaming license, who is to make the determination that its authority was exceeded so as to trigger judicial review?

¶15. Our cases construing §§ 75-76-121 and 75-76-127(2) allow for the appeal of the Commission's approval of a gaming license or of any decision where the Commission has exceeded its authority in denying a license request. In this case, a determination of whether the circuit court had jurisdiction to hear this case can be made only by first considering whether the Commission exceeded its authority in denying the preliminary site application for Bernard Bayou. How can such decision be made without judicial review? We find therefore that the circuit court did not err in allowing the appeal, since judicial review of the denial of a license or any part thereof is necessary to determine whether the Commission has exceeded its authority.

IV.

¶16. Finding that the Commission exceeded its authority in denying Royal Casino's preliminary site request, the circuit court further determined that Gaming Commission Regulation No. 2, to the extent that it "declare[s] Bayou Bernard as not being part of the Biloxi Bay or the Mississippi Sound," was neither authorized by statute nor supported by other legal authority. In *Mississippi Casino Operators Ass'n v. Mississippi Gaming Commission,* 654 So. 2d 892 (Miss.1995), however, we recognized that Miss. Code Ann. § 75-76-7 provides the Commission with the authority "to determine the

locations of casinos which wish to build in the Gulf Coast area." *Id.* at 894.

¶17. Miss. Code Ann. § 97-33-1(a) provides for gaming in counties bordering the Gulf Coast as follows:

> On a cruise vessel as defined in Section 27-109-1 whenever such vessel is in the waters within the State of Mississippi, which lie adjacent to the State of Mississippi south of the three (3) most southern counties in the State of Mississippi, and in which the registered voters of the county in which the port is located have not voted to prohibit such betting, gaming or wagering on cruise vessels as provided in Section 19-3-79.

Asked to determine whether the Commission had exceeded its authority by approving a proposal to construct an artificial inlet upon which to float a gaming ship, we addressed the failure of § 97-33-1(a) to define specifically "waters within the State of Mississippi, which lie adjacent to the State of Mississippi south of the three (3) most southern counties . . . ." The Court noted that "unlike the provisions regarding gaming on the Mississippi River, the Gulf Coast gaming provision does not expressly state that gaming is allowed on all 'navigable waters' within the counties which border on the Gulf of Mexico." *Casino Operators*, 654 So. 2d at 894. Regulation No. 2 was drafted, therefore, to provide some definition to the statutory language.[(2)] It provides as follows:

> Waters within the State of Mississippi which lie adjacent to the three (3) most southern counties of the State. In addition to the Mississippi Sound, this would include St. Louis Bay, Biloxi Bay, and Pascagoula Bay. *However, the rivers and bayous leading into these bays, including but not limited to Jourdan River, Wolf River, Bernard Bayou, Tchoutacabouffa River, Pascagoula River and Escatawpa are not within the authorized area.* In determining where the river ends and the bay begins, an imaginary line shall be drawn from the foremost land mass at the intersection of the river and bay, straight across the river to the foremost land mass of the intersection on the other side.

(emphasis added).

¶18. In *Casino Operators*, we expressly held that Regulation No. 2 was "a reasonable interpretation of the statute." *Id.* at 894-895.

¶19. Royal Casino and the Board of Education, however, argue that the site in question is part of Biloxi Bay, because its waters, shallow and stagnant as they may be, are subject to the ebb and flow of the tide. Their position is based on a creative, if not disingenuous, interpretation of *Cinque Bambini Partnership v. State,* 491 So. 2d 508 (Miss. 1986) and *State ex rel. Rice v. Stewart,* 184 Miss. 202, 184 So. 44 (1938). They assert, as they did at the hearing:

> More recently, in *Bambini, supra,* the Mississippi Supreme Court, relying on both *Borax* [*Consolidated, Ltd. v. City of Los Angeles,* 296 U.S. 10 (1935)], *supra*, and *Stewart*, *supra,* described the site proposed by Royal Casino as "Bayou Bernard, an admittedly commercially navigable portion of Biloxi Back Bay." *Bambini*, 491 So. 2d at 516. In reaching this conclusion, the Court in *Bambini, supra,* held as "[t]his Court has repeatedly stated . . . 'the beds of all its shores, arms and inlets of the sea, [are] wherever the tide ebbs and flows.'" *Id.* (quoting *Stewart*, 184 So. at 49).

Because the Supreme Court of Mississippi has spoken on the issue, then, no "opinion," ruling or regulation of an administrative agency can contradict that ruling. It is fundamental that regulations of the MGC and opinions of the Attorney General cannot nullify or contravene established law. *Biloxi Bay consists of all areas within the ebb and flow of the tide, including Bayou Bernard and the Royal Casino site.*

(emphasis added). We have made no such pronouncement. In **Cinque Bambini**, discussing the distinction between the navigable waters test and the ebb and flow test to determine whether waters were held in trust for the public benefit, it was noted that:

This Court has repeatedly stated its understanding of the geographical scope of the federally created trust as including, at least,

the soil, and . . . the minerals therein contained, the beds of all its shores, arms and inlets of the sea, wherever the tide ebbs and flows.

*Id.* at 516 (quoting **Stewart**, 184 Miss. at 230, 184 So. at 49). The opinion further states that "Cinque Bambini argue that our cases to date have failed to recognize as within the federal grant any tidal waters which were not navigable in fact," which statement is followed by a string cite, with parentheticals, of some eleven cases, including **"State ex rel. Rice v. Stewart**, 184 Miss. 202, 219, 184 So. 44, 45 (1938)(Bernard Bayou, an admittedly commercially navigable portion of Biloxi Back Bay)." **Bambini,** 491 So. 2d at 516. Turning to **Stewart,** we find language to the effect that "the bill of complaint charged that Bayou Bernard in Harrison County, Mississippi, an inlet of the Mississippi Sound, is a navigable body of water . . . ." **Stewart**, 184 So. at 49. Thus, it appears that what Royal Casino and the Board are considering a "holding" of this Court is merely dicta from one case based on an allegation or admission in a complaint from a prior case. There is no merit to this argument.

¶20. Based on our express finding in **Casino Operators** that Gaming Commission Regulation No. 2 is a reasonable interpretation of Miss Code Ann. § 97-33-1(a), we find that the circuit court erred in ruling that the Commission exceeded its authority in determining that Bernard Bayou was not a legal gaming site.

V.

¶21. The circuit court also found that the Commission's decision to deny the request for site approval was arbitrary and capricious. The Commission asserts, pursuant to Miss. Code Ann. § 75-76-125(3) (d), that its findings can be challenged only when not supported by "any evidence." The parties agree as to the standard applied to determine whether an administrative agency has acted arbitrarily or capriciously:

"Arbitrary" means fixed or done capriciously or at pleasure. An act is arbitrary when it is done without adequately determining principle; not done according to reason or judgment, but depending upon the will alone, --- absolute in power, tyrannical, despotic, nonrational, --- implying either lack of understanding of or disregard for the fundamental things.

"Capricious" means freakish, fickle, or arbitrary. An act is capricious when it is done without reason, in a whimsical manner, implying either a lack of understanding or of a disregard for the

surrounding facts and settled controlling principles . . . . [citation omitted].

*McGowan v. Mississippi State Oil & Gas Board,* 604 So. 2d 312, 322 (Miss. 1992)(quoting *Mississippi State Dept. of Health v. Southwest Mississippi Regional Medical Center,* 580 So. 2d 1238, 1240 (Miss. 1991)). Given the deference we afford agencies in interpreting their own regulations, an agency hardly can be charged with acting arbitrarily or with caprice or whimsy when it has made a decision that is consistent with its own published policies and regulations. To the contrary, had the Commission found Bernard Bayou not to be a bayou, but rather a suitable place for gaming operations, in defiance of Regulation No. 2's express exclusion of those waters from the choice of suitable sites, we would have to say that it acted arbitrarily and capriciously. As discussed *supra,* we found Regulation No. 2 to be a reasonable interpretation of Miss. Code Ann. § 97-33-1(a) in *Mississippi Casino Operators Ass'n v. Mississippi Gaming Comm'n,* 654 So. 2d 892, 894 (Miss. 1995). Thus, the Commission properly followed Regulation No. 2 in reaching its decision.

¶22. At the site assessment hearing on April 21, 1994, the Commission heard evidence from both opponents and proponents of Royal Casino's proposed development plan. Notwithstanding the validity of Regulation No. 2 and its delineation of suitable and unsuitable sites for gaming operations, the Commission's decision is supported by the evidence with which it was presented. A variety of topographic and quadrangle maps illustrated Bernard Bayou's attenuated relationship to the Back Bay of Biloxi. The affidavit of Rear Admiral Wesley Hull (Ret.) of the National Oceanic and Atmospheric Administration, who has made tidal observations and hydrographic surveys while mapping the area for several decades articulated the standard definitions of different waterways, such as bays, rivers, creeks, bayous and sloughs, explaining, "All of these waterways may or may not be tidal. Just because a waterway is tidal does not classify it as a particular feature." He concluded that

> In my review of the surveys, charts, maps, publication[s], and documents of the area, the waterway that leads from Big Lake to northwest of the intersection of U.S. Highway 49 and Intersection [sic] 10 is clearly marked as a Bayou. It is recognized on the products and publications of the Federal and State agencies as Bernard Bayou. The standard accepted definition of Bayou describes the waterway as it previously and presently exists. The site requested by Royal Casinos is on a Bayou; it is not on the Back Bay of Biloxi, Biloxi Bay or the Mississippi Sound.

¶23. Phillip LaMoreaux, Sr., a certified professional hydrologist, reviewed United States Geological Survey topographic quadrangle maps of the site and concluded that

> In my opinion, the body of water that runs through this site areas in the upper portion or drainage area of Bernard Bayou and that it is a bayou and not a bay. It certainly is not part of the back bay of Biloxi.

> * * * *

> . . . the identification of a body of water as a bay, lake, river, bayou or creek is not done based on chance or the whim of the mapmaker, but on hydrography uniform standards. The body of water on which the Royal Casino site is to be located is identified on the USGS Gulfport North Quadrangle as Bernard Bayou. The classification of this body of water as a bayou is consistent

with identification of similar bodies of water along the Gulf Coast as bayous and not a bay.

¶24. George Cole, a professional engineer and surveyor, who opined that the mean tidal affect at the site made it part of the tidal waters of the Mississippi Sound and the Back Bay of Biloxi, albeit as an estuary,

> It is noted that delineation of the interior limits of an estuary deals strictly with hydrological and legal concepts. It would therefore follow that whether or not the water body in question is called a bay or a bayou or a river would have no bearing on its legal standing as a juridical bay (Beazley 1978). This is an important concept since, for navigational or cartographic convenience, geographic areas, such as channels, may be identified with place names using other criteria.

¶25. Reflecting the concerns of his constituency, former State Representative Mark Garriga stated that opposition by Gulf Coast residents was so great that the Legislature rejected proposals to amend the legislation so as to allow gaming on "navigable waters" defined as "naturally occurring rivers, creeks, bayous or lakes" located "in any county bordering on the Gulf Coast of Mexico that in their unimproved state, have sufficient depth and width of water for floating a vessel for 30 consecutive days." Garriga indicated that there had been widespread opposition to inland gaming and that the Attorney General's August 29, 1990 letter to Senator Vic Franckiewicz, Jr., had rendered an opinion that it was not legal. Having served on the House Ways and Means Committee which considered proposals to open more areas to gaming, Garriga construed the statute as follows:

> The statutory language of the Gaming Control Act is not that complicated. It says the waters south of the three coastal counties. It may be difficult to say exactly what that includes, but it is not difficult to determine what it is not. It is not an inland canal; it is not an inland waterway; it is not a river; it is not a creek that flows north from the bay or the sound or from north to south. It is none of these things.

¶26. Royal Casino and the Board of Education base their argument that the Board acted arbitrarily and capriciously on several comments made by the Commissioners, taken out of context, at the May 31, 1994 special interim meeting. For example, they cite Commissioner Gresham's comment that "if I had my druthers, I'd sit down with you and Bob and me and I guess we'd go into executive session . . . [and] I'd get a map of the Mississippi coast and draw me a line." They neglect to point out that Gresham concluded his remark by stating, "That's good, but we're appointed to uphold the law, and that's my thinking about it."

¶27. The Commission's decision is consistent with its own Regulation No. 2. Moreover, its finding that Bernard Bayou is a bayou is supported by the evidence in the record. Finally, the position that the decision was arbitrary and capricious is supported only comments and observations taken out of their proper context. We therefore find that the circuit court erred in finding that the Commission had acted arbitrarily and capriciously.

## VI.

¶28. The circuit court denied the Commission's motion to dismiss the Board as a party to the appeal and ruled that the Board was a proper party to challenge the Board's decision. The Commission now

argues that the Board did not have standing because, unless specified otherwise by statute, only parties to disputes may bring an appeal. Citing Miss. Code Ann. § 75-76-3(5), it contends that the Board cannot show that a substantial right has been violated because there is no vested right in conducting gaming operations on one's property. The Board, on the other hand, asserts that it is aggrieved by the Commission's decision because it stands to lose some $180,000,000 in rental revenues it had anticipated receiving from Royal Casino over the next forty years if the license is not approved. Moreover, it claims that it is a proper party because Miss. Code Ann. § 75-76-5(z) defines "party" as "the Mississippi Gaming Commission and any licensee or other person appearing of record in any proceeding for judicial review of any action, decision or order of the commission."

¶29. Mississippi's standing requirements are quite liberal. *Van Slyke v. Board of Trustees of State Institutes of Higher Learning,* 613 So. 2d 872, 873 (Miss. 1993); *Calcote v. Wise*, 219 Miss. 270, 68 So. 2d 477 (1953). In *Fordice v. Bryan,* 651 So. 2d 998 (Miss.1993), we explained:

> Under article III, § 2 of the United States Constitution, the federal courts limit review to actual "cases and controversies." Such restrictive language is not found in the Mississippi Constitution. "Therefore, we have been more permissive in granting standing to parties who seek review of governmental actions." *Van Slyke v. Board of Trustees*, 613 So. 2d 872, 875 (Miss. 1993). We have ruled that parties have standing to:

> sue or intervene when they assert a colorable interest in the subject matter of the litigation or experience an adverse effect from the conduct of the defendant, or as otherwise authorized by law.

> *State ex rel. Moore v. Molpus*, 578 So. 2d 624, 632 (Miss. 1991).

*Fordice,* 651 So. 2d at 1003. The Board, by virtue of its participation in the site approval hearings and its joining with Royal Casino in a timely appeal to the circuit court of the denial of the site approval application, is a "party" pursuant to Miss. Code Ann. § 75-76-5(z). Further, the $180,000,000 the Board stood to earn from Royal Casino's lease on the property gives it a "colorable interest" in the proceedings at issue. Because the School Board has a colorable interest and the statutory definition of "party" is met, there is standing to challenge this action by the Gaming Commission.

¶30. Because the site in question includes sixteenth section land, the Board has the legal responsibility to manage the property:

> An overwhelming body of law sets forth that in the State of Mississippi sixteenth section land is trust land and title to such lands in the trust was granted to and resides in, the State of Mississippi.

> * * * * *

> "Sixteenth section lands are held in trust for the benefit of the school children and these trusts with the attendant responsibilities of the trustee must be considered as other trusts are considered." *Bragg v. Carter,* 367 So. 2d 165, 167 (Miss. 1979).

*Morrow v. Vinson,* 666 So. 2d 802, 805-806 (Miss. 1995). The Board, as trustee of the land, is, therefore, a "person aggrieved by a final decision or order of the commission" pursuant to Miss.

Code Ann. § 75-75-121. In addition, "[a]s record titleholder, the State of Mississippi, through its managing or supervising agent, the Board of Education, has standing to bring or defend actions in federal or state courts respecting these trust lands, the same as any common-law trustee." ***Hill v. Thompson,*** 564 So. 2d 1, 6 (Miss. 1989).

¶31. Given the Board's early and active participation in the site approval proceedings, its more than "colorable interest" in the Commission's decision and its special role as trustee of the sixteenth section lands involved, the circuit court properly found that it had standing to appeal the Commission's decision.

### VII.

¶32. On July 26, 1996, four months after the last briefs were filed in this case pursuant to M.R.A.P. 31(b), the Board of Education of Harrison County filed a Motion for Leave to File Supplemental Brief. The Gaming Commission responded on August 5, 1996 with its objection to the motion. The twenty-six (26) page Supplemental Brief which the School Board seeks to file purports to "offer alternative grounds even more persuasive to the legal mind than those relied on by the Circuit Court and upon the basis of which the case has been briefed to this point." Drawing heavily from ***Cinque Bambini Partnership v. State***, 491 So. 2d 508, 516 (Miss. 1986), the proposed Supplemental Brief attempts to add new legal meaning to the concept of "waters," broadening its parameters so as to allow river boat gambling wherever the tides may ebb and flow. It suggests that "[i]nexplicably, the Circuit Court failed to refer to the far more powerful functional commonality between floating casino vessel gaming and the admiralty and maritime industry that when grasped commands a common jurisdictional course." Not only were such arguments not before the circuit court for its consideration, but further, they serve only "to muddy the waters of the bayou."

¶33. With the exception of M.R.A.P. 28(c)'s provision that once reply briefs and cross-appeals have been filed, "no further briefs may be filed except with leave of Court," the Rules make no provision for "supplemental briefs." Rule 28(j) allows for citation of supplemental authorities, wherein a party may file a letter which "shall, without argument, state the reasons for the supplemental citations."

¶34. Nowhere do our rules of appellate procedure provide for the filing of such an out-of-time brief. While no time restrictions are placed upon citations of supplemental authorities pursuant to Rule 28(j), we do not consider a twenty-six page brief setting forth a new legal argument and authorities in support thereof to be a Rule 28(j) letter. We therefore deny the motion for leave to file the supplemental brief.

### VIII.

¶35. The circuit court correctly entertained Royal Casino's appeal of the Commission's decision and allowed the Board to remain as a party. We further find that the evidence in the record supports the Commission's decision to deny preliminary approval for the proposed Bernard Bayou development site. It cannot be said that the Board acted arbitrarily, capriciously or in excess of its statutory authority. We therefore reverse the order of the circuit court and reinstate the Commission's decision.

¶36. **REVERSE THE ORDER OF THE CIRCUIT COURT AND REINSTATE THE COMMISSION'S DECISION.**

**PRATHER AND SULLIVAN, P.JJ., PITTMAN, BANKS, ROBERTS, SMITH AND MILLS, JJ., CONCUR. LEE, C.J., CONCURS IN RESULT ONLY.**

1. Gaming Commission Regulation No. 2, as promulgated November 14, 1990, provides locations where cruise vessels can operate as follows:

> Waters within the State of Mississippi which lie adjacent to the three (3) most southern counties of the State. In addition to the Mississippi Sound, this would include St. Louis Bay, Biloxi Bay, and Pascagoula Bay. *However, the rivers and bayous leading into these bays, including but not limited to Jourdan River, Wolf River, Bernard Bayou, Tchoutacabouffa River, Pascagoula River and Escatawpa are not within the authorized area.* In determining where the river ends and the bay begins, an imaginary line shall be drawn from the foremost land mass at the intersection of the river and bay, straight across the river to the foremost land mass of the intersection on the other side.

(emphasis added).

2. Regulation No. 2 was drafted in accordance with the Attorney General's August 29, 1990 letter opinion.