# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2000-CC-01090-SCT

*BEVERLY ENTERPRISES*

*v.*

*MISSISSIPPI DIVISION OF MEDICAID*

## ON MOTION FOR REHEARING

| | |
|---|---|
| DATE OF JUDGMENT: | 6/5/2000 |
| TRIAL JUDGE: | HON. PAT WISE |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | JOHN L. MAXEY |
| | CHRISTINA CARROLL |
| ATTORNEY FOR APPELLEE: | BARBARA A. BLUNTSON |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | REVERSED AND RENDERED - 02/28/2002 |
| MOTION FOR REHEARING FILED: | 08/16/2001 |
| MANDATE ISSUED: | 3/21/2002 |

**EN BANC.**

**EASLEY, JUSTICE, FOR THE COURT:**

¶1. The motion for rehearing is granted. The original opinions are withdrawn, and these opinions are substituted therefor.

¶2. After being denied reimbursement by the Mississippi Division of Medicaid (Medicaid) for medical services rendered to Medicaid beneficiaries, Beverly Enterprises (Beverly) appeared before the Division of Medicaid Review Panel (Panel) at a hearing on April 18, 1999. The Panel recommended denying Beverly's appeal, and the Executive Director of Medicaid adopted the recommendation in its order of July 15, 1999. Beverly appealed to the Hinds County Chancery Court, First Judicial District, which affirmed the order on June 5, 2000.

¶3. Beverly appeals the chancellor's order affirming the decision of the Panel, which denied reimbursements for nursing services that were undervalued due to a computer programming "glitch."

## FACTS

¶4. Beverly operates a number of nursing facilities in Mississippi, and a majority of its patients are insured by Medicaid. Pursuant to Miss. Code Ann. § 43-13-117(4)(b) (1999) and federal regulations promulgated by the federal Health Care Financing Administration (HCFA), Medicaid operates on a case mix system, which is designed to pay nursing facilities according to the amount of care devoted to particular patients. This requires the facility to prepare a medical assessment of each patient, called a Minimum Data Set

(MDS), and the date that it is performed becomes the reference date. This assessment is performed on each resident at least once a quarter, and Medicaid reimburses the facility quarterly for those patients who are covered by Medicaid. The facilities are reimbursed according to the treatment provided to individual patients.

¶5. In mid-December, 1998, Beverly installed a new computer program system. Due to programming errors, Beverly's system was incompatible with Medicaid's system, causing the MDSs of several hundred patients to be mischaracterized as "BC-1" from that time until Beverly reset its reference dates on January 14, 1999, by making its significant corrections of prior assessments. As a result, Beverly was reimbursed for all of its Medicaid patients at a rate of BC-1 for a period of a few months to a few days, depending on the date of the last assessment for individual patients. BC-1 represents the lowest pay rate possible, and usually applies to residents who are mostly self-sufficient, but require some supervision.

¶6. The HCFA provides that errors in a MDS may be corrected by making significant corrections to prior assessments. This resets the reference date, and essentially begins a new quarter for that particular patient. On January 8, 1999, Medicaid alerted Beverly of a possible problem in its billing. Upon investigation Beverly realized that approximately 700 patients were mischaracterized by the defective programming. Beverly made corrections to all but twelve on January 14, 1999. Once the corrections were made, Mediciad adjusted the pay rate prospectively from that day. Beverly estimates that it lost $734,633.45 in reimbursements for nursing care that it provided between mid-December, 1998, and January 14, 1999.

## STANDARD OF REVIEW

¶7. When this Court reviews a decision by a chancery or circuit court concerning an agency action, it applies the same standard of review that the lower courts are bound to follow. *Miss. Comm'n on Envtl. Quality v. Chickasaw County Bd. of Supervisors*, 621 So.2d 1211, 1216 (Miss 1993). We will entertain the appeal to determine whether the order of the administrative agency 1) was unsupported by substantial evidence, 2) was arbitrary or capricious, 3) was beyond the power of the administrative agency to make, or 4) violated some statutory or constitutional right of the complaining party. *Id*. at 1215. The Court must reverse an agency decision if the decision "violated some statutory or constitutional right of the complaining party." *Molden v. Miss. State Dep't of Health*, 730 So.2d 29, 33 (Miss. 1998).

## LEGAL ANALYSIS

**I. Whether the Mississippi Division of Medicaid's refusal to grant Beverly Enterprises's request for reimbursement without substantial evidence, or, in the alternative, arbitrarily and capriciously violated Beverly's statutory and constitutional rights.**

¶8. The Health Care Financing Administration of the United States Department of Health and Human Services manual provides as follows:

[If] the erroneous data in the prior MDS is major enough to warrant correction, then the facility may optionally choose to perform a new comprehensive "significant correction of prior assessment" if both of the following conditions are satisfied:

(1) The assessment in error is the most recent assessment; and

(2) The resident did not experience an actual change "significant change in status" between the time of

the original assessment and the new comprehensive assessment. However, the resident's clinical condition is different from that depicted in the assessment in error and it would otherwise appear that there had been a significant change in status.

If the facility chooses to perform a "significant correction" assessment, then a new MDS and RAPs are required, with the new MDS performed using a new observation period (i.e., a new Assessment Reference Date (A3a)).

HCFA RAI Version 2.0 Guidelines (1995).

¶9. The above-quoted passage provides for the correction of errors in the most recent MDS reports, and requires "a new observation period." "The Division of Medicaid, Case Mix, does not allow assessments with the same assessment reference date to be replaced by new assessments with that same assessment reference date once they have been received and accepted into the Medicaid system." Division of Medicaid Case Mix Update CMX-1 (April 1, 1998) (emphasis added).

¶10. Medicaid interprets this updated regulation to mean that the corrected MDSs submitted by Beverly cannot relate back to the date of the original, mischaracterized MDSs. Therefore, it contends, the corrected MDSs may only be applied prospectively for the purposes of Medicaid reimbursements, and it may not retroactively pay Beverly additional reimbursements for the services it rendered prior to January 14, 1999.

¶11. Beverly has presented evidence that it is possible for Medicaid to delete erroneous information from the system and replace it. It cites the State Medicaid Plan, 1-7(A), which allows Medicaid to make adjustments to the MDSs that change the classification of the resident. These changes may result in a lower or a greater payment to the provider. However, this provision of the State Plan only applies when Medicaid performs an audit pursuant to the State Plan, 3-1(c). The errors of which Beverly complains were not discovered by an internal audit of Medicaid, and this remedy is therefore not available to Beverly.[1]

¶12. Medicaid does not contest the validity of the information in the corrected MDSs, but rather that its regulations prohibit it from retroactively reimbursing Beverly from the time period between the submission of the original MDSs and the corrected MDSs. In fact, had Medicaid argued that if it violated its own rules by reimbursing Beverly, it may have faced liability from HCFA. 42 C.F.R. IV, § 447.30(d)(1) authorizes HCFA to order "the Medicaid agency of any state" to reduce payments to nursing homes in order to recoup overpayments made by Medicaid. If the Medicaid agency does not comply with the order, HCFA may then withhold federal payments to the state Medicaid agency. 42 C.F.R. IV, § 447.30(d)(3). Medicaid further asserts that because the agency's action was in accordance with federal and state regulations, Medicaid did not act arbitrarily or capriciously, and its decision was based on substantial evidence that the corrected MDSs were not completed until January 14, 1999.

¶13. The record shows that the agency did correct the amended assessments prospectively from the date of the corrections, and refused to reset the values for the few MDSs that were not timely corrected. Beverly concedes that it is not seeking recovery for the (approximately 12) patients for whom significant corrections were not offered.

¶14. While it is true that the then existing HCFA regulations do not provide for retroactive relief and that the administrative agency followed its guidelines in that respect, Article 3, Section 14 of the Mississippi Constitution provides that "no person shall be deprived of life, liberty, or property except by due process of

law." The failure to reimburse Beverly was clearly a violation of due process and the decision of the Panel was arbitrary and capricious.

¶15. This Court defined both arbitrary and capricious in the context of administrative agencies in *Miss. State Dep't of Health v. Natchez Cmty. Hosp.*, 743 So.2d 973 (Miss. 1999). In *Natchez*, this Court held that an administrative agency's decision is considered to be arbitrary "when it is not done according to reason and judgment, but depending on the will alone." *Id*. at 977 (citing *Burks v. Amite County Sch. Dist.*, 708 So.2d 1366, 1370 (Miss. 1998)). A capricious action is defined as being "done without reason, in a whimsical manner, implying either a lack of understanding of or disregard for the surrounding facts and settled controlling principles." *Id*. In *McGowan v. Miss. State Oil & Gas Bd.*, 604 So.2d 312, 322 (Miss. 1992), this Court defined arbitrary and capricious as follows:

> "Arbitrary" means fixed or done capriciously or at pleasure. An act is arbitrary when it is done without adequately determining principla; not done according to reason or judgment, but depending upon the will alone, -absolute in power, tyrannical, despotic, non-rational, -implying either a lack of understanding of or a disregard for the fundamental nature of things.

> "Capricious" means freakish, fickle, or arbitrary. An act is capricious when it is done without reason, in a whimsical manner, implying either a lack of understanding of or a disregard for the surrounding facts and settled controlling principles.

¶16. The greater problem is the arbitrary nature of the regulations. For example, Medicaid is allowed to perform audits on nursing homes. If Medicaid finds that an error has occurred, it can go into the computer and change the original assessment date to make sure that the nursing facility is not paid at a higher rate. On the other hand, as in this situation, if a provider has been underpaid by Medicaid, the provider is not allowed to change the original assessment date. To the contrary, the provider is only allowed prospective relief from the time the correction was made forward.

¶17. It is unrefuted that a computer software glitch in a newly installed system caused Beverly to miscalculate the correct amount of funds necessary to properly reimburse them for services actually rendered to approximately 712 patients. Beverly was unaware of any discrepancy until Medicaid notified it on January 8, 1999. Beverly followed appropriate procedure and immediately, within four working days, submitted significant corrections to 700 patient accounts on January 14, 1999. Due to the then existing HCFA policy, which only provides for prospective relief, Beverly incurred a loss of $734,633.45, which constitutes the nursing cost from the original assessment date in mid-December to the correction date of January 14, 1999.

¶18. Miss. Code Ann. § 43-13-117 states in pertinent part:

> Medical assistance as authorized by this article shall include payment of part or all of the costs, at the discretion of the division or its successor, with approval of the Governor, for the following types of care and services and rendered to eligible applicants who shall have been determined to be eligible for such care and services within the limits of state appropriations and federal matching funds....

Miss. Code Ann. § 43-13-117.

¶19. This statute clearly grants Medicaid the right to make partial or full payments for certain types of care and services rendered to eligible recipients. Although the Mississippi statute authorizes Medicaid to make

payment for services rendered, Medicaid is also guided by Section 43-13-121 of the Mississippi Code to adopt and promulgate reasonable rules, regulations and standards in the further administration of the Medicaid program. Miss. Code Ann. § 43-13-121(1) states in pertinent part:

> The division is authorized and empowered to administer a program of medical assistance under the provisions of this article, and to do the following:
>
> (a) Adopt and promulgate reasonable rules, regulations and standards, with approval of the Governor:
>
> (i) Establishing methods and procedures as may be necessary for the proper and efficient administration of this article;....

¶20. The Medicaid HCFA policy does allow health care providers to correct erroneous submissions. However, such corrections are not allowed during the elapsed time between the original submission and the new or corrected submission because a new reference date period is required. There cannot be two assessments within the same reference date. The inequity of this procedure has now been corrected by a change in HCFA regulations which allows "corrections made within 14 days of detecting an error." HCFA 2.1.1.

¶21. Medicaid claims that it was impossible to replace the assessments for the time period during which Beverly suffered the losses without actually changing the MDS computer record. However, it is clear from the record testimony of Janet Youngblood, a former nurse auditor of Medicaid, that on prior occasions Medicaid has in fact deleted erroneous submissions in its computer system and replacement submissions were made without changing the dates of the reference period. These replacement submissions were appropriately categorized detailing the corrected amount of reimbursement to the health care provider. Youngblood testified, "[t]here is a way to do it. It's a very time consuming process, but there is a way to do it. It was done when I worked there."

¶22. This Court has stated that, "[a]n act is capricious when it is done without reason, in a whimsical manner, implying either a lack of understanding of or a disregard for the surrounding facts and settled controlling principles." *Miss. Dep't of Envtl. Quality v. Weems*, 653 So. 2d 266, 274 (Miss. 1995). Medicaid clearly places form over substance in claiming that Beverly failed to "mitigate its losses." Thereby Medicaid disallowed payment for Beverly's provided services to its patients. In its decision, Medicaid failed to even mention the computer software glitch which caused this problem and, instead, dwelt upon 12 patients for which no significant corrections were submitted. The fact that a mere 12 patients of the 712 were not significantly corrected due to being overlooked in the rush by Beverly to submit significant corrections is irrelevant. Beverly is not asking to be reimbursed for those 12 patients that were overlooked. In fact, Beverly offers to forfeit any amount of reimbursement for these 12 patients. Medicaid's action here is at the very height of arbitrariness. As in *Weems*, Medicaid's "administrative act is arbitrary and capricious if the agency 'entirely failed to consider an important aspect of the problem, or offered an explanation for its decision that runs counter to the evidence before the agency." *Id*. at 281. Medicaid has failed to consider the most important aspect of the problem. Medicaid clearly had the ability to delete data without changing the dated period from the computer and subsequently to take replacement data which would then generate correct payment to the provider.

¶23. It is not disputed by Medicaid that Beverly provided nursing services to 700 of their patients at a level

above that of BC1. Therefore, Beverly should be compensated for these services.

## CONCLUSION

¶24. This Court finds that Medicaid's refusal to grant Beverly's request for reimbursement was arbitrary and capricious and violated Beverly's constitutional rights. Therefore, we reverse the chancery court's judgment and the Medicaid orders that the corrections should not be allowed retroactively and the default payment rate maintained. This Court hereby renders judgment that Beverly Enterprises shall recover from the Division of Medicaid $734,633.45, the amount of reimbursement for the 700 patients mischaracterized by the defective programming.

¶25. **REVERSED AND RENDERED.**

**PITTMAN, C.J., SMITH, P.J., WALLER, DIAZ AND CARLSON, JJ., CONCUR. COBB, J., CONCURS IN RESULT ONLY. McRAE, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY GRAVES, J.**

**McRAE, PRESIDING JUSTICE, DISSENTING:**

¶26. I disagree with the majority's decision to grant Beverly Enterprises' Motion for Rehearing. The federal and state regulations that governed the Mississippi Division of Medicaid at the relevant times provided that nursing facilities cannot be reimbursed for losses occurring between the original submission of erroneous patient assessments and the submission of corrected assessments. These "significant corrections of prior assessments" could only be applied prospectively. The chancery court therefore did not err in failing to apply the corrections retroactively, and in holding that the approximately twelve assessments for which Beverly did not make corrections should be maintained at the default payment rate. We are bound under our rules of review to uphold the chancellor. Beverly maintains that the chancellor's decision was arbitrary and capricious. This is simply not true. The Division of Medicaid followed the federal guidelines that were in place at the time. Beverly controlled its own destiny, in that it controlled its computer system and took no precautions to ensure that errors, such as those that are the focus of this case, did not occur. Beverly knew the federal rules and regulations governing the correction of errors and reimbursement, particularly the time constraints to file a claim. It is wrong for it to ask us to change the rules to its benefit after the "game is over."

¶27. The Health Care Financing Administration of the U.S. Department of Human Services manual provides as follows:

[If] the erroneous data in the prior MDS is major enough to warrant correction, then the facility may optionally choose to perform a new comprehensive "significant correction of prior assessment" if both of the following conditions are satisfied:

(1) The assessment in error is the most recent assessment; and

(2) The resident did not experience an actual change "significant change in status" between the time of the original assessment and the new comprehensive assessment. However, the resident's clinical condition is different from that depicted in the assessment in error and it would otherwise appear that there had been a significant change in status.

> If the facility chooses to perform a "significant correction" assessment, then a new MDA and RAPs are required, with the new MDS performed using a new observation period (i.e., a new Assessment Reference Date (A3a)).

HCFA RAI Version 2.0 Guidelines (1995).

¶28. The above-quoted passage provides for the correction of errors in the most recent MDS reports, but applies prospectively due to the requirement of "a new observation period." "The Division of Medicaid, Case Mix, <u>does not allow assessments with the same assessment reference date to be replaced by new assessments with that same assessment reference date</u> once they have been received and accepted into the Medicaid system." Division of Medicaid Case Mix Update CMX-1 (April 1, 1998) (emphasis added).

¶29. The Division interprets this updated regulation to mean that the corrected MDSs submitted by Beverly cannot relate back to the date of the original, mischaracterized MDSs. Therefore, it contends, the corrected MDSs may only be applied prospectively for the purposes of Medicaid reimbursements, and it may not retroactively pay Beverly additional reimbursements for the services it rendered prior to January 14, 1999.

¶30. An administrative agency is vested with the authority to interpret its own regulations. We have said that "[t]his Court affords great deference to an administrative agency in interpreting its own regulations." ***Miss. Gaming Comm'n v . Bd. of Educ.***, 691 So.2d 452, 455 (Miss. 1999). However, this deference is of no import where the agency's action is contrary to the language of the governing statute. ***Id.*** Miss. Code Ann. § 43-13-121(1)(a)(iii) (1999), authorizes the agency to establish reasonable fees, charges and rates for medical services, and "shall not change any such fees, charges or rates except as may be authorized in Section 43-13-117." As discussed, the Division did not violate section 43-13-117.

¶31. Beverly presented evidence that it is possible for the Division to delete erroneous information from the system and replace it. It cites the State Medicaid Plan, 1-7(A), which allows the Division to make adjustments to the MDSs that change the classification of the resident. These changes may result in a lower or a greater payment to the provider. However, this provision of the State Plan only applies when the Division performs an audit pursuant to the State Plan, 3-1(c). The errors of which Beverly complains were not discovered by an internal audit of the Division, and this remedy is therefore not available to Beverly.[(2)]

¶32. The Division does not contest the validity of the information in the corrected MDSs, but rather that its regulations prohibit it from retroactively reimbursing Beverly from the time period between the submission of the original MDSs and the corrected MDSs. In fact, had Medicaid violated its own rules by reimbursing Beverly, it may have faced liability from HCFA. 42 C.F.R. IV, § 447.30(d)(1) authorizes HCFA to order "the Medicaid agency of any state" to reduce payments to nursing homes in order to recoup overpayments made by Medicaid. If the Medicaid agency does not comply with the order, HCFA may then withhold federal payments to the state Medicaid agency. 42 C.F.R. IV, § 447.30(d)(3). Because the agency's action was in accordance with federal and state regulations, the Division did not act arbitrarily or capriciously, and its decision was based on substantial evidence that the corrected MDSs were not completed until January 14, 1999.

¶33. Beverly mistakenly alleges that the Review Board denied its claim for retroactive reimbursements of more than $700,000 on the basis that it did not submit corrections for 12 out of 700 MDSs, and therefore "failed to mitigate its damages." The record shows that the agency did correct the amended assessments prospectively from the date of the corrections and declined to reset the values for the few MDSs that were

not timely corrected. Beverly concedes that it is not seeking recovery for the (approximately 12) patients for whom significant corrections were not offered. This issue therefore lacks merit.

¶34. Because the Division of Medicaid's regulations require that nursing facilities cannot be retroactively reimbursed for losses occurring before the submission of the "significant corrections of prior assessments," Beverly Enterprises has not shown that the Division has arbitrarily deprived it of a property interest without due process. The chancery court therefore did not err in failing to apply the corrections retroactively and in holding that the approximately twelve assessments for which Beverly did not make corrections should be maintained at the default payment rate. I dissent to the conclusion reached by the majority. The decision of the chancellor should be affirmed, and Beverly's motion for rehearing should be denied.

**GRAVES, J., JOINS THIS OPINION**.

1. We note that in March, 2000, the HCFA changed its regulations. Nursing facilities may now make changes to MDSs that have already been submitted, so long as the corrections are made within 14 days of detecting an error. Health Care Financing Administration, Long Term Care Resident Assessment Instrument 2.0, Draft Provider Instructions for Making Automated Corrections Using the New MDS Correction Request Form (March 2000).

2. We note that in March, 2000, the HCFA changed its regulations. Nursing facilities may now make changes to MDSs that have already been submitted, so long as the corrections are made within 14 days of detecting an error. Health Care Financing Administration, Long Term Care Resident Assessment Instrument 2.0, Draft Provider Instructions for Making Automated Corrections Using the New MDS Correction Request Form (March 2000). This does not help Beverly in its present situation.