# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 1999-CC-00548-SCT

*AMERICAN LEGION POST #134*

*v.*

*MISSISSIPPI GAMING COMMISSION*

| | |
|---|---|
| DATE OF JUDGMENT: | 03/15/1999 |
| TRIAL JUDGE: | HON. GEORGE B. READY |
| COURT FROM WHICH APPEALED: | DESOTO COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | GERALD W. CHATHAM, SR. |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: R. STEWART SMITH |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | AFFIRMED ON DIRECT APPEAL; VACATED ON CROSS APPEAL - 03/22/2001 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**PITTMAN, CHIEF JUSTICE, FOR THE COURT:**

¶1. On the Court's own motion, the original opinion in this case is withdrawn, and this opinion is substituted therefor.

## STATEMENT OF THE CASE

¶2. American Legion Post 134 ("Post 134"), located in Horn Lake, Mississippi, was the holder of a charitable bingo license issued by the Mississippi Gaming Commission ("Commission"). Post 134 regularly conducted bingo games in its bingo hall.

¶3. The Commission received a complaint about the bingo operations at Post 134 in October, 1996. Agent Sandra Ammons ("Agent Ammons"), of the Enforcement Division of the Commission, was assigned to investigate the complaints. Agent Ammons attended several bingo games as an undercover agent and noted several violations of the Charitable Bingo Law, Miss. Code Ann. §§ 97-33-50 *et seq.* (2000).

¶4. The Commission completed its investigation and sent a notice letter to Post 134, dated June 16, 1997. A hearing was held on September 9, 1997, which eventually resulted in the hearing officer's revocation of the charitable bingo license held by Post 134. The hearing officer found that Post 134 had violated several charitable bingo regulations, including Regulation A, § 2(d)(7), Regulation H, Regulation J, Regulation N, § 5, and Regulation R, § 6, as well as state statutes Miss. Code Ann. § 97-33-53(i) - (j) and § 97-33-75(2)

(c).

¶5. Post 134 requested a review by the Commission of the hearing officer's decision to revoke the license held by Post 134. The Commission, after careful review, sustained the hearing officer's revocation and issued an order thereby revoking Post 134's license to conduct charitable bingo.

¶6. Post 134 then appealed to the Circuit Court of DeSoto County, the county in which Post 134 is located. Post 134 filed an application for a Temporary Restraining Order ("TRO") And/Or Preliminary Injunction on February 6, 1998, without notice to the Commission. The circuit court granted the TRO which restrained the Commission from enforcing the revocation of Post 134's charitable bingo license.

¶7. The Commission filed a Motion to Deny the Preliminary Injunction and dissolve the Temporary Restraining Order which was denied by the DeSoto County Circuit Court. The circuit court, on February 13, 1998, signed an Order Granting Preliminary Injunction, which allowed Post 134 to continue its operations in spite of the revocation of its license until the circuit court ruled on the merits of the appeal.

¶8. On February 16, 1999, the circuit court upheld the Commission's revocation of the charitable bingo license but allowed Post 134 to continue operations if it filed an appeal to this Court. Such appeal was filed March 23, 1999.

## STATEMENT OF FACTS

¶9. Post 134 is located in Horn Lake, DeSoto County, Mississippi. Post 134 has held a charitable bingo license since October, 1992. Post 134 has regularly conducted bingo games in its bingo hall.

¶10. The Commission received a complaint about the bingo operations at Post 134 in October, 1996. Agent Ammons of the Enforcement Division of the Commission was assigned to investigate the complaints. She attended several bingo games as an undercover agent and witnessed several violations of the Charitable Bingo Act. The Commission completed its investigation and sent a notice letter to Post 134 dated June 16, 1997. A hearing was held on September 9, 1997.

¶11. At the hearing on the matter, Agent Ammons gave extensive testimony regarding her visits to Post 134. Admitted into evidence were games programs, bingo paper, session reports, and monthly reports.

¶12. The hearing officer found numerous violations committed by Post 134. Post 134 was found to have violated Regulation H by failing to post the playing of several B-Swat games and winner-take-all games.

¶13. The hearing officer also found that Post 134 had violated Regulation J which requires that the operator submit to the Commission session reports listing all games played. Post 134 failed to list on the session reports the B-Swat and winner-take-all games that had been played.

¶14. Post 134 was found to have violated Regulation J on several session reports by failing to report any winnings from the B-Swat and winner-take-all games. As noted above, these games were not listed on the session reports as being played.

¶15. The hearing officer found that Post 134 had violated Regulation N, § 5, by selling bingo paper at discounted prices. Agent Ammons purchased bingo paper for $12 per pack. These packs were listed with the Commission as being sold for $14 per pack.

¶16. The hearing officer found that Post 134 had violated Miss. Code Ann. § 97-33-53(b)(i)-(j). Specifically, Post 134 failed to end the bingo session at midnight on November 23, 1996, and begin a new session at 12:01 a.m. on November 24, 1996, as required by statute. It was found that Post 134 had falsified its session report for November, 1996, in violation of Miss. Code Ann. § 97-33-75(2)(c), by listing the session that began late on November 23, 1996, as actually beginning on November 24, 1996.

¶17. Post 134 was found to have violated Regulation R, § 6, that requires that VLC machines be opened only after all activities have ceased for the day and opened in the presence of at least two employees. Agent Ammons testified that she witnessed Ronald Smith open the VLC machines by himself before the activities had ceased for the day.

¶18. The hearing officer found that Post 134 had paid compensation to two concession workers from the bingo accounts, expenditures that were not authorized by statute or regulation. Finally, the hearing officer found that Post 134 had played "bonus line" games in violation of Regulation A, § 2(d)(7). Post 134 did not dispute this finding.

¶19. The hearing officer, in his conclusion, noted that the violations of Regulations H, J, N, § 5, and A, § 2(d)(7), as well as the violation of Miss. Code Ann. § 97-33-75(2)(c), in and of themselves, warranted revocation of the bingo license. The hearing officer went on to note that the other violations committed by Post 134 further supported the decision to revoke Post 134's charitable bingo license.

¶20. Post 134 requested a review by the Commission of the hearing officer's decision to revoke the license held by Post 134. The Commission reviewed the record and transcript of the hearing and sustained the hearing officer's revocation on January 22, 1998, and issued an order revoking Post 134's license to conduct charitable bingo.

¶21. On February 2, 1998, Post 134 filed an appeal in the Circuit Court of DeSoto County, the county where Post 134 conducts its bingo operations. Post 134 filed an application for, and the circuit court entered, a Temporary Restraining Order ("TRO") And/Or Preliminary Injunction on February 6, 1998, without notice to the Commission. This TRO restrained the Commission from enforcing the revocation of Post 134's charitable bingo license.

¶22. The Commission filed a Motion to Deny the Preliminary Injunction and dissolve the Temporary Restraining Order with the DeSoto County Circuit Court. However, the circuit court, on February 13, 1998, signed an Order Granting the Preliminary Injunction. This injunction allowed Post 134 to continue its operations in spite of the revocation of its license until the circuit court ruled on the merits of the appeal.

¶23. After a delay of one year attributable to Post 134, the circuit court, on February 16, 1999, considered the parties' briefs. The circuit court upheld the Commission's revocation of the charitable bingo license on March 15, 1999, but allowed Post 134 to continue operations if it filed an appeal to this Court. Such appeal was filed March 23, 1999.

## APPELLANT'S STATEMENT OF THE ISSUE

**I. WHETHER THE DECISION OF THE MISSISSIPPI GAMING COMMISSION TO REVOKE POST 134'S CHARITABLE BINGO LICENSE WAS ARBITRARY AND CAPRICIOUS.**

**I. WHETHER THE DECISION OF THE MISSISSIPPI GAMING COMMISSION TO REVOKE POST 134'S CHARITABLE BINGO LICENSE WAS ARBITRARY AND CAPRICIOUS.**

**II. WHETHER THE CIRCUIT COURT ERRED IN ISSUING AN INJUNCTION WHICH ALLOWED POST 134 TO CONTINUE OPERATING ITS BINGO HALL WHILE ITS APPEAL OF THE MISSISSIPPI GAMING COMMISSION'S DECISION WAS PENDING.**

## DISCUSSION OF LAW

**I. WHETHER THE DECISION OF THE MISSISSIPPI GAMING COMMISSION TO REVOKE POST 134'S CHARITABLE BINGO LICENSE WAS ARBITRARY AND CAPRICIOUS.**

**A. Standard of Review**

¶24. A strict standard governs judicial review of administrative agency decisions. As this Court has stated:

[O]ur Constitution does not permit the judiciary of this state to retry *de novo* matters on appeal from administrative agencies. Our courts are not permitted to make administrative decisions and perform the functions of an administrative agency. Administrative agencies must perform the functions required of them by law. When an administrative agency has performed its function, and has made the determination and entered the order required of it, the parties may then appeal to the judicial tribunal to hear the appeal. The appeal is a limited one ... since the courts cannot enter the field of administrative agency. The court will entertain the appeal to determine whether or not the order of the administrative agency (1) was supported by substantial evidence, (2) was arbitrary and capricious, (3) was beyond the power of the administrative agency to make, or (4) violated some statutory or constitutional right of the complaining party.

*Mississippi State Dep't of Health v. Natchez Community Hosp.*, 743 So.2d 973, 976 (Miss. 1999) (quoting *Cook v. Mardi Gras Casino Corp.*, 697 So.2d 378, 380 (Miss.1997)(citations omitted)).

¶25. The Mississippi Gaming Commission revoked the charitable bingo license of Post 134 as a result of numerous violations of charitable bingo regulations and state statutes. Post 134 is not arguing that the Commission does not have the power to revoke its charitable bingo license, nor is it arguing that the Commission has done something beyond its authority to do so. Post 134 is arguing that the Commission performed an arbitrary and capricious act in revoking Post 134's license.

¶26. If the Commission's decision to revoke Post 134's license is not based on substantial evidence, it necessarily follows that the decision is arbitrary and capricious. "Substantial evidence means more than a scintilla or a suspicion." *Natchez Community Hosp.*, 743 So.2d at 977 (citing *Mississippi Real Estate Comm'n v. Anding*, 732 So.2d 192, 196 (Miss.1999)). "An administrative agency's decision is arbitrary when it is not done according to reason and judgment, but depending on the will alone." *Natchez Community Hosp.*, 743 So.2d at 977 (citing *Burks v. Amite County Sch. Dist.*, 708 So.2d 1366, 1370 (Miss.1998)). An action is capricious if done without reason, in a whimsical manner, implying either a

lack of understanding of or disregard for the surrounding facts and settled controlling principles. *Id.*

¶27. A careful review of the evidence presented at the hearing before the Commission leads this Court to conclude that not only was there substantial evidence to revoke Post 134's license, there was overwhelming evidence to do so. The decision to revoke Post 134's charitable bingo license was not arbitrary and capricious. The ruling of the DeSoto County Circuit Court upholding the revocation of Post 134's charitable bingo license is affirmed.

### B. Review of the Decision of the Hearing Officer

¶28. The hearing officer found that Post 134 violated Regulation H as set forth by the Commission. Regulation H states that

> (a) The licensee is required to post in an obvious and conspicuous place at each entrance a sign which contains a list of the games to be played during each session and the prizes which may be awarded, . . . .

¶29. On November 23, 1996, Post 134 failed to post the playing of a B-Swat game during intermission, as well as a winner-take-all game played at the end of the session. Post 134 also failed to post a B-Swat game played during the session on November 24, 1996, as well. On February 21 and 22, 1997, Post 134 failed to list any B-Swat games played during the main game, nor did Post 134 list the winner-take-all game played at the end of the session.

¶30. Agent Ammons attended each session of bingo noted above. She testified that the programs were not posted at the entrance as required. The programs were stacked next to the counter where she purchased her bingo packs. Agent Ammons testified that she witnessed the B-Swat and winner-take-all games being played. Introduced into evidence was the posted list of games as well as the bingo paper on which the B-Swat game was played. The posted list did not list either the B-Swat or the winner-take-all games.

¶31. The hearing officer found that the Commission had established Post 134's violation of Regulation H by clear and convincing evidence. The Hearing Officer noted that the listing of games and prizes "assists the Mississippi Gaming Commission [in] track[ing] the play of bingo and the prize money given away by a licensed bingo [hall]. . . . The play of unscheduled . . .games and prizes undermines the purpose of the Charitable Bingo Act."

¶32. The hearing officer concluded that the violation of Regulation H warranted revocation of Post 134's license. Support for this decision is found in Regulation H, § 1(b), which states that the "failure to post the sign as required could result in revocation of [the] license."

¶33. The hearing officer next found that Post 134 had violated Regulation J which requires that the operator submit session reports to the Commission. These reports must include the name, number and type of each game offered during the session.

¶34. Post 134 failed to list several games that had been played on its session reports. The session reports were entered into evidence. The session report for November 23, 1996, did not include the B-Swat game or winner-take-all game played during that session. The November 24, 1996, session report did not list the B-Swat game played during that session. The session report for February 21, 1997, does not list the winner-take-all game played at the end of the session. The February 22, 1997, session report did not list

the B-Swat game or the winner-take-all game played during that session. Agent Ammons testified that she witnessed these games being played. The hearing officer held that the Commission had proven this violation by clear and convincing evidence.

¶35. The hearing officer noted that when a license holder violates Regulation J, the Commission is unable to track "how much money was generated from the play of bingo or how much money was given in prizes." The hearing officer then concluded that this violation of Regulation J warranted revocation of Post 134's license. Once again, this revocation is supported by the language of Regulation J which states that the "[f]ailure to maintain complete and accurate reports could result in revocation of the license."

¶36. Post 134 was also found to have violated Regulation J by failing to report any winnings in the winner-take-all games. Post 134 also failed to report winnings from the B-Swat games played during the November 23 and 24, 1996, sessions, as well as the winnings from the B-Swat game played February 21, 1997.

¶37. The hearing officer concluded that the Commission had proven this violation by clear and convincing evidence. Agent Ammons testified that she witnessed the games being played. She then testified that no winnings were listed on the session reports. It was then noted by the hearing officer that this violation of Regulation J added weight to the need for the revocation of Post 134's license.

¶38. The hearing officer also found that Post 134 had violated Regulation N, § 5, by selling bingo paper at discounted prices. Regulation N, § 5, states that "[o]rganizations may not (1) discount the price of any disposable or non-disposable bingo card . . . ." Any change in the price of bingo packs must be approved by the Commission under Regulation N, § 4. Agent Ammons purchased bingo paper for $12 per pack. These packs were listed with the Commission as being sold for $14 per pack. The packs, along with the reports showing the $14 price per pack were introduced into evidence. The price change was not approved by the Commission.

¶39. The hearing officer found that the Commission had proven this violation by clear and convincing evidence. The hearing officer noted that the sale of bingo paper actually generates revenue for the bingo hall. If the paper is sold for prices other than those listed with the Commission, the Commission is unable to determine exactly how much money the hall is taking in. As such, the violation of Regulation N, § 5, warrants revocation of Post 134's license.

¶40. The hearing officer found that Post 134 had violated Miss. Code Ann. § 97-33-53(b)(i)-(j). Specifically, Post 134 failed to end the bingo session at midnight on November 23, 1996, and begin a new session at 12:01 a.m. on November 24, 1996, as required by statute. As stated by the hearing officer, "[u]nder the law a session must occur within a five hour time frame within one midnight to midnight context and may not begin and cross over midnight from one day to the next." Agent Ammons testified that the session in question began at 11:00 p.m. on November 23, 1996, and did not end at midnight on November 23, 1996. The hearing officer found that the Commission proved this violation by clear and convincing evidence.

¶41. The hearing officer concluded by noting that this violation, taken alone, would not warrant revocation. However, the hearing officer found that this violation did lend weight to the decision to revoke Post 134's license.

¶42. Further, the hearing officer found that Post 134 had falsified its session report for November, 1996, in violation of Miss. Code Ann. § 97-33-75(2)(c), by listing the session that began late on November 23, 1996, as actually beginning on November 24, 1996. The session report was entered into evidence and showed that Post 134 actually listed the session as beginning at midnight, November 24, 1996.

¶43. The hearing officer found that the Commission had proven this violation by clear and convincing evidence and that a violation of this statute subjects Post 134 to revocation of its license. The hearing officer noted that "the falsifying or making a false entry on a bingo record, alone and of itself warrants revocation of a bingo license."

¶44. Post 134 was also found to have violated Regulation R, § 6, which states that

> No less than once each week and after all activities have ceased for the day, the machine is opened in [the] presence of at least two (2) workers and the contents are removed and tagged with its respective machine number. The contents are then counted for each machine and the results are entered on the daily report.

Agent Ammons testified that she witnessed Ronald Smith open the VLC machines by himself before the activities had ceased for that day. The witness for the bingo hall testified that the machines were opened while bingo was still going on because the hall was running low on cash.

¶45. The hearing officer found that the Commission had proven this violation by clear and convincing evidence. Regarding the sanctions, the hearing officer noted that this violation warrants disciplinary action against Post 134.

¶46. The hearing officer then found that Post 134 had paid compensation to two concession workers from the bingo accounts, expenditures that were not authorized by statute or regulation. Agent Ammons testified that the Commission guidelines state that Post 134 was "allowed to pay up to $400 a session to anyone that is responsible in the holding, conducting, or operating a bingo game - bingo sessions." Agent Ammons testified that the session report for February 22, 1996, showed that concession workers had been paid from bingo proceeds.

¶47. The hearing officer found that the Commission had proven this violation by clear and convincing evidence. The hearing officer concluded that this violation, standing alone, would not warrant revocation of Post 134's license. However, this violation lends weight to the decision to revoke Post 134's license.

¶48. The hearing Officer found that Post 134 had played "bonus line" games in violation of Regulation A, § 2(d)(7). Post 134 did not dispute this finding. Regulation A, § 2(d)(7) states:

> (7) Other than those games as authorized by statute, bingo does not include a game whereby the player contributes to a pot and if such player wins a bingo game on a predetermined number that person wins, in addition to the regular prize, the contents of the pot. No other type game or raffle in which a person makes any wager on the chance of winning any prize may be offered or held in connection with the authorized bingo games as described in this section. Violation of this subsection will result in revocation of the organization's bingo license.

(emphasis added). There was no dispute that Post 134 violated this regulation. This violation in and of itself warrants revocation of Post 134's bingo license.

¶49. Overwhelming evidence exists to warrant the revocation of Post 134's license. Agent Ammons witnessed many of these violations. Session reports, monthly reports, and bingo paper were entered into evidence and supported the testimony given by Agent Ammons. Regulation A, § 2(d)(7) states that a violation of that section will result in revocation of the license. The hearing officer, after finding that there was a violation of Regulation A, § 2(d)(7), was bound to revoke Post 134's license.

¶50. Because the hearing officer's decision to revoke was based on clear and convincing evidence, the decision to revoke Post 134's license was not arbitrary and capricious. Numerous violations of gaming regulations, as well as state statutes, were proven. It should be noted that the hearing officer found that there were several issues raised by the Commission that were not supported by clear and convincing evidence. The hearing officer refused to find Post 134 in violation of regulations and statutes in those instances. This issue is without merit.

> **II. WHETHER THE CIRCUIT COURT ERRED IN ISSUING AN INJUNCTION WHICH ALLOWED POST 134 TO CONTINUE OPERATING ITS BINGO HALL WHILE ITS APPEAL OF THE MISSISSIPPI GAMING COMMISSION'S DECISION WAS PENDING.**

¶51. The Mississippi Gaming Commission cross-appealed, arguing that the Circuit Court of DeSoto County had no jurisdiction to enter a temporary restraining order or a temporary injunction allowing Post 134 to continue operations while this case is on appeal to this Court. The Commission is incorrect.

¶52. Under Rule 5.08 of the Uniform Rules of Circuit and County Court Practice,

> [i]n appeals from lower authorities, when the statute provides for automatic supersedeas, the statute shall govern. In all other cases the court may grant a supersedeas upon proof of the party requesting the same, applying the same standards as for a preliminary injunction. . . .

U.R.C.C.C. 5.08 (emphasis added). The statute in question, Miss. Code Ann. § 97-33-61 (2000), does not grant an automatic supersedeas. Therefore, the circuit court had the authority to grant the injunction if the standards for a preliminary injunction were met. Further, Rule 8 of the Mississippi Rules of Appellate Procedure allows the circuit court to give injunctive relief pending appeal subject to review by this Court.

¶53. The Commission also argued in the alternative that if the Circuit Court of DeSoto County had the authority to enter such an injunction, the circuit court erred in failing to apply the factors necessary to grant the injunction. The factors that should be used by the circuit court in determining whether to grant or deny an injunction include:

> (1) there exists a substantial likelihood that plaintiff will prevail on the merits;

> (2) the injunction is necessary to prevent irreparable harm;

> (3) the threatened harm to the applicant outweighs the harm the injunction might do to the respondents; and,

> (4) entry of the injunction is consistent with the public interest.

*City of Durant v. Humphreys County Mem'l Hosp.*, 587 So.2d 244, 250 (Miss. 1991). The granting

of the TRO is within the discretion of the circuit judge. This Court will not disturb the granting of a TRO unless it has been shown that the circuit judge abused his discretion. ***Moore v. Sanders***, 558 So.2d 1383, 1385 (Miss. 1990).

¶54. A review of the circuit judge's TRO shows that the circuit judge did take into consideration the last three factors set forth above. However, the circuit judge disregarded factor (1): that there exists a substantial likelihood that Post 134 would prevail on the merits of the appeal. The Commission's hearing officer found, by clear and convincing evidence, that Post 134 had violated Regulation A, § 2(d)(7). Post 134 did not dispute that it violated this regulation. As noted above, violation of this regulation will result in the revocation of Post 134's charitable bingo license.

¶55. Because Post 134 violated a regulation that required revocation of its charitable bingo license, there was little likelihood, if any, that Post 134 wold prevail in its appeal. Therefore, the circuit judge abused his discretion in granting injunctive relief.

¶56. Further, this Court takes note that Post 134 took full advantage of this TRO by effectively keeping this issue from being reviewed by the DeSoto County Circuit Court for a period of one year. Post 134 has continued to operate for two years after having its license revoked by the Commission.

¶57. The Commission filed a motion to dismiss with prejudice on May 4, 1998. According to the motion, the record had been stamped "filed" by the clerk on March 2, 1998. Over 40 days had passed, and Post 134 had not filed its brief on the merits or made a motion for extension of time. The Commission requested that the case be dismissed if Post 134 did not file its brief within 14 days. There was no action on this motion.

¶58. The Commission filed an amended motion to dismiss with prejudice on August 14, 1998. In the motion the Commission noted that Post 134 had advised the Commission that it had not received the record from the Commission. However, counsel for Post 134 had received notice on February 25, 1998, that the Circuit Clerk of DeSoto County had received the record. Counsel for Post 134 simply did not pick up the records from the DeSoto County Circuit Clerk.

¶59. Nevertheless, the counsel for the Commission had the custodian of Commission records send a copy of the Commission's records to the counsel for Post 134. Counsel for Post 134 received those records on June 19, 1998. As of the date of the filing of the amended motion, August 14, 1998, counsel for Post 134 had filed no brief with the circuit court, nor had the counsel requested additional time.

¶60. On August 18, 1998, the circuit court finally issued an order giving Post 134 until September 1, 1998, to file its brief. In his order, Circuit Judge George B. Ready acknowledged that Post 134 had failed to substantially comply with the rules of the court. One hundred sixty-nine (169) days had elapsed since the Commission had filed the complete record with the court. One hundred twenty-nine (129) days had passed since the deadline for filing Post 134's brief. Judge Ready then stated that he had the authority to dismiss the appeal for failure to substantially comply with the rules for over four months. However, Judge Ready did not dismiss the appeal. He gave Post 134 an additional two weeks to file a brief. Indeed the law violator was extended greater protections than the state's citizens represented by the Commission.

¶61. Counsel for Post 134 then filed a motion for additional time on August 27, 1998. Post 134 was granted an additional two weeks, or until September 14, 1998, to file its brief.

¶62. When papers were finally filed on September 18, 1998 (four days late), they were styled "Memorandum in Support of Petitioner's Motion for Application for Preliminary Injunction and Answer to Respondent's Motion to Dissolve Temporary Restraining Order." The Commission then filed another motion to dismiss on October 1, 1998, stating that the "Memorandum" filed did "not address any of the potential issues which this Court may consider in deciding whether or not to overturn a decision of an administrative agency." The Commission went on to note that six months had passed since the record had been filed in this case, and that the delay in Post 134's filing of a brief was prejudicial to the Commission, as well as the citizens of Mississippi.

¶63. The circuit judge's final order dated February 16, 1999, states that both parties filed briefs and participated in oral arguments before the court. However, Post 134 never filed a proper brief before the Circuit Court of DeSoto County. In contrast, the Commission did file a brief on January 15, 1999. There is no transcript of any oral argument. The circuit court upheld the Commission's revocation of the charitable bingo license but allowed Post 134 to continue operations if it filed an appeal to this Court. Such appeal was finally filed March 23, 1999.

¶64. Over six months passed from the time the record was filed in the Circuit Court of DeSoto County until Post 134 filed its "brief." Such a disregard for court rules should not be ignored. Judge Ready's failure to dismiss this action for failure to substantially comply with court rules and his grant of injunctive relief have allowed Post 134 to continue unlicensed bingo operations for two years. A review of Judge Ready's explanation given while rendering his decision to affirm the revocation indicates that Judge Ready had reservations about granting injunctive relief.

## CONCLUSION

¶65. The revocation of Post 134's license was supported by clear and convincing evidence and was not arbitrary and capricious. The Circuit Court of DeSoto County was correct in affirming the Commission's revocation of Post 134's license. However, the Circuit Court of DeSoto County abused its discretion in entering a TRO and preliminary injunction allowing Post 134 to continue its bingo operations.

¶66. The judgment of the DeSoto County Circuit Court affirming the Commission's revocation of Post 134's charitable bingo license is hereby affirmed. The preliminary injunction entered by the Circuit Court of DeSoto County is hereby vacated. The Commission is now free to enforce its order revoking Post 134's license to conduct charitable bingo.

**¶67. AFFIRMED ON DIRECT APPEAL; VACATED ON CROSS-APPEAL.**

**BANKS AND McRAE, P.JJ., SMITH, MILLS, WALLER, COBB, DIAZ AND EASLEY, JJ., CONCUR.**