# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 1998-SA-01055-SCT

*MISSISSIPPI STATE DEPARTMENT OF HEALTH AND Q. S. C., LLC d/b/a FIRST CHOICE SURGICAL CENTER*

*v.*

*NATCHEZ COMMUNITY HOSPITAL*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/29/1998 |
| TRIAL JUDGE: | HON. DENISE OWENS |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANTS: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: ELLEN Y. DALE O'NEAL |
| | L. CARL HAGWOOD |
| | J. CHADWICK MASK |
| | ROBERT N. WARRINGTON |
| | KYLE LESLIE HOLIFIELD |
| ATTORNEYS FOR APPELLEE: | GAIL WRIGHT LOWERY |
| | KATHRYN H. HESTER |
| | ELLEN MORRIS |
| | MICHAEL R. HESS |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | AFFIRMED - 7/29/1999 |
| MOTION FOR REHEARING FILED: | 08/12/99; denied 10/07/99 |
| MANDATE ISSUED: | 10/14/99 |

**BEFORE PITTMAN, P.J., WALLER AND COBB, JJ.**

**PITTMAN, PRESIDING JUSTICE, FOR THE COURT:**

**STATEMENT OF THE CASE**

¶1. This case is appealed from the Chancery Court of Hinds County where Chancery Judge Denise Owens vacated the Final Order of the Mississippi State Department of Health ("the Department") granting a Certificate of Need ("CON") to Q.S.C., LLC, d/b/a First Choice Surgical Center ("QSC") to establish a freestanding ambulatory surgery center ("ASC") in Natchez, Mississippi. The Department and QSC perfected this appeal from the chancery court's judgment.

## STATEMENT OF FACTS

¶2. On June 27, 1997, QSC filed a Certificate of Need application with the Department for the establishment and operation of an ASC in Natchez. The Department deemed the application complete on July 7, 1997, and sent notice to all affected parties. Natchez Community Hospital ("NCH") and Natchez Regional Medical Center ("NRMC") requested a public hearing.

¶3. On September 15-16, 1997, and October 6-7, 1997, a public hearing was held. The Department, QSC, NCH, and NRMC, appeared at the hearing and offered testimony and evidence.

¶4. QSC is owned by Dr. Arnold E. Feldman. QSC proposes to renovate a single specialty surgery center owned and operated by Dr. Feldman into an ASC that offers a full range of surgical services and procedures in general outpatient surgery. The facility will contain two operating rooms, three pre-op/recovery rooms, and business, staff, and counseling areas, and will require a capital expenditure of approximately $509,462.

¶5. QSC's CON application was filed under the 1996-97 Mississippi State Health Plan ("the Plan"). Chapter X of the Plan establishes the criteria and standards which the applicant must meet before receiving CON authority to establish an ASC. The Mississippi Certificate of Need Review Manual (Rev. 1997) (the "Manual") provides general CON criteria and considerations by which the Department reviews all applications for Certificates of Need.

¶6. The Staff of the Health Planning and Resource Development Division of the Department ("the Staff") issued a Staff Analysis recommending disapproval of QSC's CON application. The Hearing Officer found, after the public hearing, that QSC had presented credible and substantial evidence that the proposed ASC met all the criteria set forth in the Plan. The Hearing Officer issued his Findings of Fact, Conclusions of Law and Recommendations ("Findings of Fact"), recommending that QSC's CON be granted. The State Health Officer reviewed the record, concurred in the Hearing Officer's recommendation, and granted the requested CON.

¶7. NCH appealed the Final Order of the Mississippi State Department of Health to the Chancery Court of the First Judicial District of Hinds County, Mississippi, on February 18, 1998. Oral argument was held on May 26, 1998. Chancellor Denise Owens reversed the Department's Final Order, issuing a Memorandum Opinion and Judgment vacating and setting aside QSC's CON on May 29, 1998. The Department and QSC appealed to this Court on June 4, 1998.

## STATEMENT OF THE ISSUE

**I. WHETHER THE CHANCELLOR ERRONEOUSLY ENGAGED IN FACT-FINDING WITH REGARD TO QSC'S COMPLIANCE WITH CRITERION ONE BY FINDING THAT QSC COULD NOT PERFORM 800 PROCEDURES PER YEAR, CONTRARY TO**

**THE SPECIFIC FINDING OF THE DEPARTMENT.**

**STANDARD OF REVIEW**

¶8. A strict standard governs judicial review of administrative agency decisions. Miss. Code Ann. § 41-7-201(2)(f) (1993) sets forth the applicable standard of review here:

> . . . The order shall not be vacated or set aside, either in whole or in part, except for errors of law, unless the court finds that the order of the State Department of Health is not supported by substantial evidence, is contrary to the manifest weight of the evidence, is in excess of the statutory authority or jurisdiction of the State Department of Health, or violates any vested constitutional rights of any party involved in the appeal. . . .

¶9. Most recently, this Court has outlined this limited standard of review as follows:

> This is a proceeding for judicial review of administrative action, and it is important that we understand and accept what this fact implies. The Legislature has directed that a S[tate] H[earing] O[fficer]'s CON order be subject to judicial review, but that it. . . shall not be vacated or set aside, either in whole or in part, except for errors of law, unless the Court finds that the order . . . is not supported by substantial evidence, is contrary to the manifest weight of the evidence, is in excess of the statutory authority or jurisdiction of the . . . Department . . ., or violates any vested constitutional rights of any part involved in the appeal. Miss. Code Ann. § 41-7-201(4) (Supp. 1990).

> This is nothing more than a statutory restatement of familiar limitations upon the scope of judicial review of administrative agency decisions. Magnolia Hospital v. Mississippi State Department of Health, 559 So.2d 1042, 1044 (Miss. 1990); See also Mississippi State Dep't of Health v. Mississippi Baptist Med. Ctr., 663 So.2d 563, 573 (Miss. 1995).

> **The decision of the hearing officer and State Health Officer is afforded great deference upon judicial review by this court even though we review the decision of the chancellor.** Mississippi State Dep't of Health v. Southwest Mississippi Reg'l Med. Ctr., 580 So.2d 1238, 1240 (Miss. 1991).

*St. Dominic-Jackson Mem'l Hosp. v. Mississippi State Dep't of Health,* 728 So.2d 81, 83 (Miss. 1998) (emphasis added).

¶10. This Court has stated:

> **[O]ur Constitution does not permit the judiciary of this state to retry de novo matters on appeal from administrative agencies.** Our courts are not permitted to make administrative decisions and perform the functions of an administrative agency. Administrative agencies must perform the functions required of them by law. When an administrative agency has performed its function, and has made the determination and entered the order required of it, the parties may then appeal to the judicial tribunal to hear the appeal. **The appeal is a limited one** . . . since the courts cannot enter the field of administrative agency. **The court will entertain the appeal to determine whether or not the order of the administrative agency (1) was supported by substantial evidence, (2) was arbitrary and capricious, (3) was beyond the power of the administrative agency to make, or (4) violated some statutory or constitutional right of the complaining**

**party.**

*Cook v. Mardi Gras Casino Corp.*, 697 So.2d 378, 380 (Miss. 1997) (emphasis added)(quoting *Mississippi Dep't of Envtl. Quality v. Weems*, 653 So.2d 266, 273 (Miss. 1995) (quoting *State Tax Comm'n v. Earnest*, 627 So.2d 313, 319 (Miss. 1993)).

## DISCUSSION OF LAW

### I. WHETHER THE CHANCELLOR ERRONEOUSLY ENGAGED IN FACT-FINDING WITH REGARD TO QSC'S COMPLIANCE WITH CRITERION ONE BY FINDING THAT QSC COULD NOT PERFORM 800 PROCEDURES PER YEAR, CONTRARY TO THE SPECIFIC FINDING OF THE DEPARTMENT.

¶11. QSC and the Department allege that the chancellor engaged in impermissible fact-finding regarding QSC's compliance with Criterion 1 of the State Health Plan. The chancellor reviewed the evidence before her and found that there was not sufficient evidence for the State Health Officer to grant the CON.

¶12. It is within the power of the chancellor to reverse the decision to grant the CON if such decision was not supported by substantial evidence. Substantial evidence means more than a scintilla or a suspicion. *Mississippi Real Estate Comm'n v. Anding*, 732 So.2d 192, 196 (Miss. 1999) (citing *Mississippi Real Estate Comm'n v. Ryan*, 248 So.2d 790, 793-94 (Miss. 1971)).

¶13. If an administrative agency's decision is not based on substantial evidence, it necessarily follows that the decision is arbitrary and capricious. An administrative agency's decision is arbitrary when it is not done according to reason and judgment, but depending on the will alone. *Burks v. Amite County Sch. Dist.*, 708 So.2d 1366, 1370, 125 Ed. Law Rep. 1012 (Miss. 1998). An action is capricious if done without reason, in a whimsical manner, implying either a lack of understanding of or disregard for the surrounding facts and settled controlling principles. *Id.*

¶14. We have reviewed the record in this case and determined the decision to grant the CON was not based on substantial evidence, thereby rendering the decision arbitrary and capricious. As such, we affirm the judgment of the chancellor in reversing the grant of the CON.

¶15. Criterion 1 of the State Health Plan states:

> Need Criterion: The applicant shall demonstrate that the proposed ambulatory surgery facility shall perform a minimum of 800 procedures per operating room or procedure room per year.

**(1996-1997 State Health Plan, p. X-10.)** In the Hearing Officer's recommendation to grant the CON, which was ultimately adopted by the State Health Officer, the Hearing Officer specifically found that "Q.S.C. provided credible and substantial evidence that its proposed ASC will perform the required number of procedures." The Hearing Officer took into consideration the testimony of Drs. Arnold E. Feldman, Richard M. Myers, Jr., and James R. Todd, Jr. and Ronald Calisher, QSC's expert witness, as well as letters and affidavits from other physicians supporting the ASC. The Hearing Officer discounted the testimony of other physicians who stated that they would not use the proposed ASF.

¶16. The chancellor noted in her memorandum order that "[t]he ability of Q.S.C. to meet that 800 procedure threshold is at best conjectural and speculative." Indeed, the numbers provided by the doctors as

estimates of projected usage appear to be pure speculation.

¶17. Dr. Feldman, in his application for the CON, estimated his projected usage for the ASC to be 1,600 cases. He testified at the hearing that he arrived at that number because the State required a minimum usage of 800 cases per year per room. He had no factual basis for his estimated usage.

¶18. Dr. Feldman then testified that he would be the major admitting physician to this ASC. The record shows that Dr. Feldman performed only 235 surgeries at his single-service surgery center the year before the application for the CON was filed. The record further shows that Dr. Feldman performed only 87 additional out-patient procedures at NCH and NRMC. This totals only 322 procedures actually performed. While it is feasible that Dr. Feldman's practice will continue to grow, it is not realistic to believe that Dr. Feldman himself will be able to perform 800 to 1,000 cases at the ASC as he speculates.

¶19. Dr. James Todd, Jr., testified that he planned to use the ASC to perform approximately 200 surgeries per year. However, Dr. Todd later testified that he had performed only 90 surgeries in 1996 and 57 surgeries in 1997. He also testified that he would send approximately one-half of his surgery patients to the proposed ASC.

¶20. Taking Dr. Todd's information as true, he would have to perform 400 surgeries per year in order to transfer one-half to the ASC to reach the estimated rate of 200 surgeries. Dr. Todd would, in effect, have to more than triple his current rate of surgery to meet his estimate.

¶21. Additionally, NRMC proffered testimony that Dr. Todd, in previous litigation, swore under oath that he was permanently and totally disabled and that he had severe difficulties in performing even the simplest tasks. This further casts doubt on the ability of Dr. Todd to triple his current rate of surgery.

¶22. Dr. Feldman offered the testimony of other physicians to try to prove that the new ASC would meet the usage requirements. However, these other physicians also seemed to have overestimated their projected usage of the ASC.

¶23. Dr. Richard Meyers, Jr., testified that he would transfer 350-500 cases to the ASC from either his office or from Field Memorial Hospital. Dr. Meyers testified that he performed 99% of his surgeries at Field, estimating that number to be "[p]robably in excess of 400." The actual records show that Dr. Meyers performed only 165 procedures in 1995, 119 procedures in 1996, and 130 procedures in the first ten months of 1997. Dr. Meyers then changed his testimony to state that he would probably only transfer 100 cases to the ASC.

¶24. During and after the hearing, Dr. Feldman introduced letters and affidavits from other doctors who pledged to use the facility. Dr. Bernadette Sherman, through letter and affidavit, projected her usage to be in excess of 100 cases per year. However, affidavits from NCH and NRMC show that in 1997, Dr. Sherman performed only 21 procedures at the two hospitals. No evidence was offered in support of Dr. Sherman's projections.

¶25. Dr. Frank Guerdon submitted a letter in support of the ASC stating that he would perform between 50 and 100 procedures. Dr. Alphonse Reed, also through a letter, estimated his usage of the ASC at 100 or more. The affidavits submitted by NCH and NRMC show that Dr. Guerdon performed only 51 procedures in 1997, while Dr. Reed performed only 11. As was the case with Dr. Sherman, no evidence was offered to support this projected increase.

¶26. The majority of evidence offered in support of the ASC seems to be nothing more than unsupported estimates made by physicians. Moreover, these estimates are contradicted by the actual numbers of procedures these physicians have performed in the past. The estimate of projected procedures supplied to the Hearing Officer has no factual basis. This Court has stated that a physician's ". . . unsupported statements do not constitute 'substantial evidence.'" *Mississippi State Dep't of Health v. Mississippi Baptist Med. Ctr.*, 663 So.2d 563, 578 (Miss. 1995). We agree with the chancery court that the decision to grant the CON based on an estimated usage of 800 procedures per room was not supported by substantial evidence and is, therefore, arbitrary and capricious.

¶27. Because we are affirming the chancellor's reversal in the court below, we need not address the other issues put forth by the parties.

## CONCLUSION

¶28. Unsupported statements by physicians do not provide substantial evidence upon which the Department should grant a CON. The number of procedures projected by Dr. Feldman in his application, as well as the estimates offered by other physicians, appear to be pure speculation. For these reasons, we affirm the judgment of the Hinds County Chancery Court reversing the Department's grant of the CON.

¶29. **AFFIRMED.**

**SULLIVAN, P.J., BANKS, McRAE, SMITH, MILLS, WALLER AND COBB, JJ., CONCUR. PRATHER, C.J., NOT PARTICIPATING**