827 So.2d 1 (2002)
Rebecca L. JOHNSTON, Appellant,
v.
PUBLIC EMPLOYEES' RETIREMENT SYSTEM, Appellee.
No. 2000-CC-01652-COA.
Court of Appeals of Mississippi.
March 5, 2002.
Rehearing Denied June 11, 2002.
Certiorari Denied September 26, 2002.
*2 Keith Sanders Carlton, Corinth, attorney for appellant.
Office of the Attorney General by Mary Margaret Bowers, attorney for appellee.
Before McMILLIN, C.J., THOMAS, and MYERS, JJ.
THOMAS, J., for the court.
¶ 1. Rebecca L. Johnston claimed to be injured while working as a bookkeeper for the Alcorn County Tax Collector's Office. She applied for disability benefits and was denied by the Public Employees' Retirement System's (PERS's) Medical Board. Johnston requested an appeal and a hearing was held before the Disability Appeals Committee. The Board of Trustees of the Public Employees' Retirement System affirmed the Committee's decision that Johnston was not permanently disabled as the direct result of a work related accident or traumatic event. Johnston appealed that decision to the Circuit Court of Hinds County which affirmed the decision of the Board of Trustees and the Disability Appeals Committee. Aggrieved, Johnston asserts the following issues:
I. THE BOARD ERRED IN FINDING THAT THERE WAS NO SUBSTANTIAL EVIDENCE THAT REBECCA JOHNSTON WAS DISABLED.
II. THE BOARD ERRED IN FINING THAT THERE WAS NO SUBSTANTIAL EVIDENCE THAT REBECCA JOHNSTON'S DISABILITY WAS DUTY RELATED.
Finding no error, we affirm

FACTS
¶ 2. Rebecca Johnston is a forty-one-year-old who was employed as a bookkeeper with the Alcorn County Tax Collector's office for nine and a quarter years, ending in November 1997. Johnston had problems with her back as early as 1988, when she underwent her first lower back surgery, a lumbar laminectomy. In 1996 Johnston had spinal disc surgery. She was allowed to return to work after the second surgery in February 1997. Dr. Rodney Olinger, who performed this operation, determined that it was successful.
¶ 3. In June of 1997, while working in the Tax Collector's office, another employee slapped Johnston on the back which caused her to return to Dr. Olinger for treatment because of pain. In July 1997, an MRI showed no definite recurrent disc or infection. Dr. Olinger then recommended that Johnston return to work with some restrictions on her capacity. Johnston claimed that she was unable to return to work, and she filed for disability retirement with the PERS.
¶ 4. Johnston was given a functional capacity examination in August of 1998. The results of this exam concluded that Johnston could occasionally lift weights up to thirty pounds; carry weights up to thirty-five pounds for short distances; had good rotation in sitting and standing; maintained good ability to climb stairs; was able during the procedure to stand and walk forty minutes during the examination; and is capable of sitting for periods of thirty minutes. These results matched the requirements for the job description of bookkeeper and thus, the conclusion was that Johnston could return to work.
¶ 5. After review of the functional capacity examination results, PERS denied Johnston's claim for benefits. Johnston appealed and a hearing was held before the PERS Disability Appeals Committee. The Committee submitted its report to the Board of Trustees of PERS and they held that Johnston was not permanently disabled as defined by PERS law. Johnston appealed the Board's decision to the Hinds *3 County Circuit Court which affirmed the Board's decision.

ANALYSIS
¶ 6. The standard of review in cases such as this is whether the Board's decision was not supported by substantial evidence, was arbitrary or capricious, was beyond the powers granted to the Board, or violated Johnston's constitutional rights. Sprouse v. Mississippi Employment Sec. Comm'n, 639 So.2d 901, 902 (Miss.1994). A rebuttable presumption exists in favor the Board's decision, and the burden is on Johnston to prove otherwise. Mississippi Comm'n on Envtl. Quality v. Chickasaw County Bd. of Supervisors, 621 So.2d 1211, 1215 (Miss.1993). This Court may not substitute its own judgment for the judgment of the Board nor reweigh the facts of the case. Mississippi Pub. Service Comm'n v. Merchants Truck Line, Inc., 598 So.2d 778, 782 (Miss.1992). This Court gives due deference to the factual findings of the administrative agency and to the trial judge who adopted those same findings. State Farm Ins. Co. v. Gay, 526 So.2d 534, 535 (Miss.1988).

I. DID THE BOARD ERR IN FINING THAT THERE WAS NO SUBSTANTIAL EVIDENCE THAT REBECCA JOHNSTON WAS DISABLED?
¶ 7. Substantial evidence can be defined as evidence which affords a substantial basis of fact from which the fact in issue can be reasonably inferred. Davis v. Public Employees' Retirement Sys., 750 So.2d 1225, 1233 (¶ 24) (Miss.1999). Johnston argues that there was sufficient evidence to show that she was disabled. PERS has the responsibility of examining the assessments of medical personnel and determining which ones should be relied upon in making its decision. Byrd v. Public Employees' Retirement System, 774 So.2d 434, 438(¶ 15) (Miss.2000). Under Miss.Code Ann. § 25-11-113(1)(a) (Rev. 1999), disability is defined as the following:
The inability to perform the usual duties of employment or the incapacity to perform such lesser duties, if any, as the employer, in its discretion, may assign without material reduction in compensation or the incapacity to perform the duties of any employment covered by the Public Employees' Retirement System (Section 25-11-101 et seq.).
¶ 8. There was testimony by Dr. Olinger regarding Johnston's back problems dating all the way back to 1988. According to Dr. Olinger, Johnston had always had some degree of back spasms. Johnston underwent two back surgeries that left her at a twelve percent impairment rating according to Dr. Olinger, and she was able to return to work successfully after both of these surgeries. After the second "successful" surgery and several months, Johnston was released from Dr. Olinger's care with an improvement and a five percent impairment rating. Any permanent symptoms were not considered by Dr. Olinger to be totally disabling. After Johnston was slapped on the back by a co-worker, Dr. Olinger did not believe further surgery was necessary. An MRI showed no "definite recurrent disc" and Dr. Olinger advised Johnston to return to work.
¶ 9. Johnston also performed well on the functional capacity evaluation. This evidence along with the medical assessment by Dr. Olinger were sufficient to support a finding that Johnston is not disabled. This decision is within PERS's discretion. Therefore, we hold that there is sufficient evidence in the record to support PERS's decision in this case.

II. DID THE BOARD ERR IN FINING THAT THERE WAS SUBSTANTIAL EVIDENCE THAT *4 REBECCA JOHNSTON'S DISABILITY WAS DUTY RELATED?
¶ 10. In order for a disability to be duty related, there must first be a disability. Due to the discussion above, the issue of whether Johnston suffered an on-the-job injury that led to a disability is moot.
¶ 11. THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY IS AFFIRMED. COSTS OF APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, LEE, IRVING, AND MYERS, JJ., CONCUR. CHANDLER, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY BRANTLEY, J.
CHANDLER, J., dissenting.
¶ 12. The majority finds that there was substantial evidence to support the Board's finding that Johnston is not disabled pursuant to Miss.Code Ann. § 25-11-113(a) (Rev.1999). Because I feel that the Board's decision is in clear conflict with pertinent facts in the record and the statutory definition of disability, I dissent.
¶ 13. As noted by the majority, Johnston underwent two surgeries on her back. After the last surgery in February 1997, Dr. Rodney Olinger released Johnston with certain restrictions. He instructed that she could return to light duty with a ten pound lifting restriction and no bending. These restrictions were modified in July 1997 when Johnston indicated that she was suffering intense pain after being struck on the back by a coworker. Dr. Olinger decided that Johnston would not benefit from additional surgery and recommended that she continue physical therapy and assigned her a permanent lifting restriction of five pounds. He also stated that Johnston could sit for only fifteen to thirty minutes at a time and could stand for no more than thirty minutes at a time. Johnston continued to see Dr. Olinger for complaints of neck pain. In January 1998, Dr. Olinger diagnosed her with carpal tunnel syndrome and vascular headaches. He also performed an MRI at that time which revealed a posterior central disc protrusion, C4-C5, C5-C6 and C6-C7 with small anterior marginal osteophytes at C5-C6 with moderate effacement of the thecal sac at those levels.
¶ 14. Dr. Olinger released Johnston into the care of Dr. Kerby for continued treatment of neck and lower back pain. Dr. Kerby diagnosed Johnston with vascular headaches, chronic low back pain, cervical spondylosis and carpal tunnel syndrome. He stated that he did not believe that Johnston could engage in any type of gainful employment working eight hours a day, forty hours a week.
¶ 15. A functional capacity examination was performed in August 1998. The exam report concluded that Johnston could work at the light medium level. She was able to lift thirty pounds from floor to waist and from waist to crown occasionally. In testimony before the Committee, Johnston stated that she performed the examination; however, due to the strain from the tests she had to visit the local emergency room for treatment of muscle spasms after the exam. Johnston further testified that she was able to perform her job duties until she was struck in the back by a co-worker. She stated that since the incident, she can walk only one block and can lift only eight to ten pounds.
¶ 16. Under the controlling statutory scheme, disability is defined in pertinent part as "the inability to perform the usual duties of employment or the incapacity to perform such lesser duties...." Miss.Code Ann. § 25-11-113(a) (Rev.1999). According to the Employer's Certification of Job *5 Requirements, Johnston was frequently required to write and complete reports and to use her hands for fine manipulations. She was occasionally required to use technical knowledge and to walk, sit, stand and lift between ten and twenty pounds. She was occasionally required to use machines or equipment, to squat, bend, crawl or lift twenty to thirty pounds. The employer stated in his opinion, Johnston's mobility was restricted by her back problems.
¶ 17. The above stated job requirements do not fit within the restrictions given to Johnston by Dr. Olinger. It should also be noted that Greg Younger, the Alcorn County Tax Assessor, indicated that "there is no position available which would meet these restrictions. All positions would include lifting tax books regularly which weigh ten to twenty pounds."
¶ 18. This Court is bound by a standard of review which permits it to overturn the decision of an administrative agency under the following circumstances: (1) the decision is not supported by substantial evidence, (2) the decision is arbitrary and capricious, (3) the decision is beyond the power of the administrative agency, and (4) the decision violated some statutory or constitutional right. Mississippi State Dep't of Health v. Natchez Cmty. Hosp., 743 So.2d 973, 976(¶ 10) (Miss.1999). A decision is arbitrary and capricious when an agency makes a determination that is unsupported by the evidence. Davis v. Public Employees' Ret. Sys., 750 So.2d 1225, 1230 (Miss.1999).
¶ 19. In this case, there is nothing in the record to contradict Dr. Olinger's assessment of Johnston's medical condition. Also, there is the clear statement from Younger that there is no job in the tax assessor's office which Johnston could perform within the permanent restrictions given her by her doctor. The facts make clear that the Committee's decision to disallow Johnston's request for disability retirement was arbitrary and capricious and not supported by the record.
¶ 20. I would find that Johnston was permanently disabled from performing the duties of her position as a direct result of an accident or traumatic event resulting in a physical injury occurring in the line of performance of duty. Mississippi Code Annotated § 25-11-114(6) states:
Regardless of the number of years of creditable service upon the application of a member or employer, any active member who becomes disabled as a direct result of an accident or traumatic event resulting in a physical injury occurring in the line of performance of duty, provided the medical board or other designated governmental agency after a medical examination certifies that the member is mentally or physically incapacitated for the further performance of duty and such incapacity is likely to be permanent, may be retired by the board of trustees on the first of the month following the date of filing such application.
¶ 21. Johnston testified that she was able to perform the duties of her position until she was struck by a co-worker. Also in Dr. Olinger's report, he indicated that the work incident in 1997 was the basis for his decision to lower Johnston's permanent lifting restriction to five pounds and thus exclude her from returning to her former work. The record is void of any evidence which would indicate that the reoccurrence of Johnston's pain was caused by any incident other than the work related one as claimed by Johnston.
¶ 22. For the foregoing reasons, I would reverse the circuit court's decision and find that the evidence indicates that Johnston was unable to return to work and *6 thus disabled under the relevant statutory definition.
BRANTLEY, J., JOINS THIS SEPARATE WRITTEN OPINION.