954 So.2d 440 (2006)
PUBLIC EMPLOYEES' RETIREMENT SYSTEM, Appellant
v.
Frank A. LEWIS, Appellee.
No. 2005-CC-01418-COA.
Court of Appeals of Mississippi.
November 7, 2006.
Rehearing Denied April 17, 2007.
*442 Mary Margaret Bowers, attorneys for appellant.
George S. Luter, attorneys for appellee.
Before MYERS, P.J., BARNES and ISHEE, JJ.
BARNES, J., for the Court.
¶ 1. The Mississippi Public Employees' Retirement System (PERS) appeals the decision of the Hinds County Circuit Court reversing the ruling of the PERS Board of Trustees that denied Frank A. Lewis, a former state employee, non-work related retirement disability benefits. The Hinds County Circuit Court found there was sufficient evidence of disability for Lewis and awarded him benefits. On appeal, PERS argues that the circuit court erred in finding such sufficient evidence by reweighing and reevaluating the record, thereby substituting its judgment for that of the administrative agency. We agree, and find that the circuit court erred in finding PERS's decision unsupported by substantial evidence. Accordingly, we reverse the Hinds County Circuit Court's decision and reinstate the decision of the PERS Board of Trustees denying disability benefits to Frank Lewis.

STATEMENT OF FACTS
¶ 2. Frank A. Lewis was employed by the Mississippi Department of Transportation (MDOT) as an equipment operator and material handler for cement bridge repairs. On February 23, 2001, at the age of fifty-three, Lewis applied for non-duty related disability retirement with PERS. At this time, Lewis had seventeen and one quarter years of service credit with MDOT. Lewis had suffered from diabetes for approximately fifteen to twenty years while continuing to work and manage his health. Lewis was scheduled to retire on June 1, 2001. On May 14, 2001, Lewis was in an automobile accident and received a shoulder injury. He never returned to work. On May 31, 2001, Lewis terminated his employment with MDOT.
¶ 3. Per standard procedure, two separate PERS committees, the Medical Board and the Disabilities Appeal Committee (Appeals Committee) of the Board of Trustees, examined Lewis's disability claim. Prior medical records, current independent medical evaluations, and Lewis's sworn testimony were analyzed. The committees were composed of five different doctors and one hearing officer. On December 12, 2001, after studying numerous medical records, the Medical Board found insufficient objective evidence to support Lewis's retirement disability claim. On February 7, 2003, the Appeals Committee, after considering the evidence in relation to the applicable law and regulations, and hearing Lewis's testimony, agreed with the Medical Board and recommended to the PERS Board of Trustees that Lewis be denied retirement disability benefits. Accordingly, on April 22, 2003, the PERS Board of Trustees agreed with the Appeals Committee's conclusion to deny Lewis benefits pursuant to Mississippi Code Annotated section 25-11-113. On May 14, 2003, Lewis appealed to the Hinds County Circuit Court. On June 10, 2005, the court reversed PERS's denial of Lewis's disability retirement benefits, finding sufficient evidence of disability and holding the decision of the PERS Board of Trustees unsupported by the evidence and, therefore, arbitrary and capricious. PERS appealed to this Court on July 6, 2005.
*443 ¶ 4. The Appeals Committee, in making its decision to deny Frank Lewis benefits, relied on several physicians' medical evaluations and Lewis's testimony at a hearing on February 7, 2003. However, there was conflicting evidence in both the physicians' records and Lewis's testimony regarding his medical conditions. The Appeals Committee, through its Proposed Statement of Facts, Conclusions of Law and Recommendations, submitted to the Board of Trustees the evidence the committee had evaluated and how the evidence was weighted in order to arrive at a decision.
¶ 5. The recommendation stated that most of the medical reports provided to PERS were from Dr. David Smith, Lewis's family practitioner. Dr. Smith treated Lewis from August 1998 to June 2001. Lewis's glucose levels for his diabetes fluctuated during this time. In May 2001, however, right before his car accident, and before he terminated work, Lewis's glucose level was in the "excellent" range. On PERS's Statement of Examining Physician, filed June 18, 2001, Dr. Smith opined Lewis was not at maximum medical improvement because of his glucose fluctuation. If Lewis had a schedule that allowed for regular meals, Dr. Smith thought Lewis would be better able to control his diabetes. Dr. Smith admitted, however, that he was unaware of the specifics of Lewis's job, except that Lewis had said he was unable to eat meals on time.[1]
¶ 6. The Appeals Committee was also in receipt of the medical records of Dr. Carla Mitchell Armstrong, who began seeing Lewis as a patient in May 2001, after Lewis's car accident. Initially, she treated him for a shoulder injury. One year later, Dr. Armstrong prepared a "to whom it may concern" letter stating Lewis could no longer perform his current job, or any job, because of his complaints of dizziness, along with his other problems.
¶ 7. During Lewis's hearing before the Appeals Committee, Lewis brought with him medical reports stating he had been involved in an automobile accident May 14, 2001. An MRI had shown degenerative changes in his shoulder joint, but no definite rotator cuff tear was seen. The records indicated Lewis was receiving physical therapy for this injury under Dr. Keith Melancon's guidance. On October 25, 2001, Dr. Melancon wrote in his records that, as far as Lewis's shoulder injury, he could "go back to doing everything he would like to do," but in the future he would probably require surgery.[2] On October 30, 2001, these records stated Lewis's shoulder pain was "minimal," and he was discharged from physical therapy.
¶ 8. On October 9, 2001, Dr. Lori Russell, an internist at the University of Mississippi Medical Center, independently evaluated Lewis for his disability claim. The Appeals Committee noted, however, that the medical history Lewis recounted to Dr. Russell regarding the management *444 of Lewis's diabetes contradicts his later testimony at his hearing before the Appeals Committee on February 7, 2003. Specifically, Lewis stated to Dr. Russell that he had never lost consciousness, while at the hearing he blamed his automobile accident on a loss of consciousness, presumably from his diabetes.[3] As for his work hours, Lewis told Dr. Russell he worked ten-hour days, while he told the Appeals Committee he worked from 7:00 a.m. to 3:30 p.m. Finally, Lewis told Dr. Russell sometimes he ate breakfast at work and took insulin on the job site, while at the hearing he said he often did not eat breakfast and he took his insulin at home.
¶ 9. The Appeals Committee acknowledged that Dr. Russell's independent medical evaluation advised Lewis that "[i]n order to continue working, the patient must have" an Accu-Chek machine on site to measure glucose levels, and regularly scheduled fifteen to twenty minute breaks for glucose monitoring and snacking if necessary. Dr. Russell went on to state that if the above recommendations were not feasible, she would consider Lewis disabled from his current position, and would recommend he be offered another position that would allow for adequate breaks for snacking and blood glucose monitoring. Lewis's supervisor responded to these requests that while MDOT would not purchase an Accu-Chek machine or its supplies for Lewis, MDOT would accommodate Lewis by allowing him to bring his own machine to work and accommodate him with breaks.[4] The Appeals Committee concluded that Lewis was not permanently disabled as defined in sections 25-11-113, -114. The Board of Trustees reviewed the record of proceedings before the Appeal Committee and adopted the recommendation of that committee as the order of the Board, thereby denying Lewis's request for disability benefits.
¶ 10. The Hinds County Circuit Court, in its opinion and order of June 10, 2005, reversed the Board of Trustees's denial, and found Lewis injured and "unable to perform his usual duties of employment as required by the Mississippi Department of Transportation." The circuit court relied heavily on Dr. Armstrong's statement, prepared one year after the car accident, which stated Lewis would never be able to return to work at MDOT because of his diabetes, hypertension, and shoulder injury.[5] Dr. Smith's admission that he was unaware of the specifics of Lewis's job was not mentioned in the court's order, nor was the fact that Dr. Smith found Lewis's glucose level for his diabetes "excellent" at the time Lewis terminated employment. Dr. Russell's independent evaluation recommending pro-active measures on Lewis's part to control his diabetes while at *445 work was not addressed in the circuit court's order.
¶ 11. The circuit court focused on Lewis's shoulder injury, which occurred months after he initially applied for disability. Dr. Armstrong's diagnosis after Lewis's car accident of a possible rotator cuff tear was duly noted by the court. Also, the circuit court emphasized Lewis's evaluation by orthopedist Dr. Melancon, which diagnosed Lewis with rotator cuff tendinitis and a probable tear.[6] This diagnosis was made after Lewis filed for disability but before his hearing and the Appeals Committee's decision. The circuit court concluded that, as a result of the automobile accident on May 14, 2001, Lewis had "suffered a debilitating shoulder injury and an aggravation of his diabetes and hypertension." The circuit court opined that, after an objective review of the record, PERS's decision was not supported by substantial evidence. Further, the court found it "very clear" from the record that Lewis had suffered "an injury which rendered him unable to perform his usual duties of employment" as an equipment handler at MDOT.

STANDARD OF REVIEW
¶ 12. The standard of review for appeals from administrative agency decisions is well established and limited. According to Rule 5.03 of the Uniform Rules of Circuit and County Court, the agency's decision will not be disturbed unless the judgment was: (1) unsupported by substantial evidence, or (2) arbitrary and capricious, or (3) beyond the power of the agency to make, or (4) violative of the complainant's statutory or constitutional rights. Pub. Employees' Ret. Sys. v. Smith, 880 So.2d 348, 350-51(¶ 12) (Miss. Ct.App.2004) (citing Pub. Employees' Ret. Sys. v. Dearman, 846 So.2d 1014, 1018(¶ 13) (Miss.2003)). The reviewing court may not substitute its judgment for that of the administrative agency, nor may it reweigh the evidence presented. Pub. Employees' Ret. Sys. v. Howard, 905 So.2d 1279, 1285(¶ 15) (Miss.2005). Similarly, when an appellate court evaluates a chancery or circuit court's ruling on an appeal of an agency action, it applies the same standard of review as the lower court sitting as an appellate court. Pub. Employees' Ret. Sys. v. Marquez, 774 So.2d 421, 429(¶ 32) (Miss.2000) (citing Miss. Comm'n on Envtl. Quality v. Chickasaw County Bd. of Supervisors, 621 So.2d 1211, 1215 (Miss.1993)). When this Court finds that the reviewing court has overstepped its authority and improperly overturned the agency's decision, "we will reverse and reinstate the agency's decision." Miss. State Bd. of Pub. Accountancy v. Gray, 674 So.2d 1251, 1253 (Miss.1996).

ISSUE AND ANALYSIS
WHETHER THE CIRCUIT COURT ERRED IN FINDING INSUFFICIENT EVIDENCE TO SUPPORT THE BOARD OF TRUSTEES'S DENIAL OF LEWIS'S PERMANENT DISABILITY BENEFITS CLAIM.
¶ 13. An employee must prove his non-duty related permanent retirement disability to the PERS Medical Board according to the legal requirements of Mississippi Code Annotated section 25-11-113(1)(a) (Rev.2003).[7] The agency, not the *446 reviewing court, acts as the finder of fact. Pub. Employees Ret. Sys. v. Cobb, 839 So.2d 605, 609(¶ 12) (Miss.Ct.App.2003) (citing Metal Trims Indus., Inc. v. Stovall, 562 So.2d 1293, 1296 (Miss.1990)). Fact-finding includes evaluating the testimony of witnesses for credibility. Cobb, 839 So.2d at 609(¶ 12). PERS has the sole responsibility of assessing the evaluations by medical personnel and determining which evaluations to rely upon. Johnston v. Pub. Employees' Ret. Sys., 827 So.2d 1, 3(¶ 7) (Miss.Ct.App.2002) (citing Byrd v. Pub. Employees' Ret. Sys., 774 So.2d 434, 438(¶ 15) (Miss.2000)). "Sorting through voluminous and contradictory medical records, then determining whether an individual is permanently disabled is better left to physicians, not judges." Howard, 905 So.2d at 1287(¶ 23). Moreover, it is long established that the Mississippi Constitution does not allow the judiciary to retry matters appealed from agencies de novo. Miss. State Tax Comm. v. Mississippi-Alabama State Fair, 222 So.2d 664, 665 (Miss.1969). The reviewing court must affirm the agency's decision if there is "substantial evidence" and the decision is neither "arbitrary nor capricious." URCCC Rule 5.03. "Substantial evidence" is defined as "that which provides an adequate basis of fact from which the fact in issue can be reasonably inferred." Pub. Employees' Ret. Sys. v. Dishmon, 797 So.2d 888, 892(¶ 13) (Miss.2001). An agency decision is "arbitrary" if "it is not done according to reason and judgment, but depending on the will alone." Miss. State Dep't of Health v. Natchez Comty. Hosp., 743 So.2d 973, 977(¶ 13) (Miss.1999). A "capricious" decision is "done without reason, in a whimsical manner, implying either a lack of understanding of or disregard for the surrounding facts and settled controlling principles." Id. If there is substantial evidence supporting the agency's decision, the reviewing court must give this decision substantial deference. Cobb, 839 So.2d at 609(¶ 12).
¶ 14. The Appeals Committee reviewed the records and testimony by both treating physicians and reviewing physicians regarding his disability claim. There were conflicting assessments of Lewis's potential disability. The Appeals Committee chose not to ignore the important discrepancies in the evidence. Lewis's inconsistent testimony was found to be significant by the Appeals Committee. This testimony, especially regarding how Lewis's work affected his diet, glucose monitoring, and insulin administration was contradictory. Ultimately, the Appeals Committee was not persuaded by Lewis's general attempts to manage his health. "Mr. Lewis did not give us the impression that he lacked ability to manage his diabetes. He lacked the motivation." The Appeals Committee scrutinized Lewis's glucose ranges over the years, finding his diabetes well controlled of late. Because Lewis never returned to his job, the possibility of his shoulder injury negatively impacting his work duties could not be determined. The Appeals Committee concluded that most of Lewis's problems were from noncompliance with diabetes treatment.
¶ 15. We find that the circuit court, in reversing the decision of the Board of *447 Trustees, improperly reweighed and reevaluated the evidence presented. The circuit court failed to evaluate substantial medical evidence of non-disability and the inconsistencies in Lewis's testimony. The circuit court gave much more emphasis to the shoulder injury resulting from the car accident; further, the court failed to identify any connection between the shoulder injury and Lewis's worsened diabetes. The circuit court also reevaluated evidence from the PERS medical committees' findings, especially regarding Dr. Russell's opinion that Lewis would be able to work with certain accommodations for his diabetes. Instead, the court stressed the assessment of Lewis's personal physician, Dr. Armstrong, that Lewis could not work at this or any other job because his diseases were chronic. The circuit court also ignored the inconsistencies of Lewis's testimony. The totality of Lewis's personal health habits related to work was given no comment. The possibility Lewis may have some personal responsibility regarding his diabetic condition was not considered. Finally, the circuit court did not acknowledge the fact that Lewis never returned to work after his automobile accident, and never mentioned the timing of Lewis's termination of employment, which was one day before he was scheduled to retire.
¶ 16. Lewis asserts there is substantial evidence to prove he is disabled and can no longer work. Moreover, Lewis argues PERS "ignored" substantial evidence in denying disability. Lewis also argues that the evidence provided contradicts PERS's rationale in denying benefits, and the evidence supporting PERS's decision is insubstantial.
¶ 17. The issue on appeal is not whether there would have been sufficient evidence for PERS to determine Lewis is disabled, but whether there is substantial evidence to support its decision that he is not. The agency's assigned role is that of sole fact finder. The PERS Medical Board and Appeals Committee had to determine from the evidence presented whether Lewis was able "to perform the usual duties of employment." They found he was. The two committees fulfilled their proper role by studying the physicians' assessments and deciding which to rely upon. See Byrd v. Pub. Employees' Ret. Sys., 774 So.2d 434, 438(¶ 15) (Miss.2000) (stating it is PERS Medical Board's discretion to choose which medical evaluations to rely on when inconsistent). Finally, the PERS Board of Trustees had complete discretion to weigh all of the contradictory testimony and documentary evidence in arriving at its conclusion.
¶ 18. We find the assessment by PERS supported by substantial evidence in ruling Frank Lewis was unqualified for non-duty related disability benefits under section 25-11-113. Lewis is not in perfect health, but PERS found substantial evidence to support its denial of disability benefits to him. PERS reasonably used its judgment in analyzing this evidence, studying the detailed facts as well as the surrounding circumstances. Thus, PERS's decision was not arbitrary or capricious. We find the circuit court impermissibly reevaluated the evidence. Accordingly, we find that the circuit court erred in reversing the decision of the PERS Board of Trustees. We reverse and render, reinstating PERS's decision to deny permanent disability benefits to Frank Lewis.
¶ 19. THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY IS REVERSED AND RENDERED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
*448 KING, C.J., MYERS, P.J., SOUTHWICK, CHANDLER, GRIFFIS, ISHEE AND ROBERTS, JJ., CONCUR. IRVING, J. CONCURS IN RESULT ONLY. LEE, P.J., NOT PARTICIPATING.
NOTES
[1] Much of Lewis's testimony at the February 7, 2003 hearing centered on his eating habits, since this is central to the management of diabetes. Lewis testified that doctors never told him to bring a coke or snacks to work to regulate his blood sugar. Lewis blamed his inability to eat regularly on his work situation. Lewis received thirty minutes for lunch. It was apparent that since his job sites were often in rural areas where there was nowhere nearby to buy food, Lewis, along with his coworkers, needed to pack lunches for work, which he said he did about three times per week. But, Lewis felt he could not bring lunch as his doctor told him to avoid cold cuts because of his hypertension. Also, Lewis testified that sometimes he did not bring his lunch because he overslept in the morning and did not have time to make it.
[2] Medical records in the fall of 2001 indicate Lewis had a full range of motion in his shoulder.
[3] During the February 7, 2003 hearing, when Lewis was asked why he felt unable to work, he stated he was scared he would black-out and suffer an accident. Also, he felt he could not get his blood sugar level under control while working. Since the spring of 2001, Lewis felt his diabetes had worsened and was out of control, but since he had not worked, it was better. Yet, medical records show from March and April of 2001 Lewis's blood sugar level was stable and in excellent control. Also, Lewis has no record of diabetic complications. Since he has not been working, Lewis stated his elderly mother helps prepare his meals every day, which he believes helps control his diabetes.
[4] Lewis gave conflicting testimony about the availability of breaks at his job. Additionally, Lewis admitted he never checked his blood sugar at work because using an Accu-Chek machine on repair jobs was difficult and there was not a clean water source.
[5] The circuit court erroneously refers to Dr. Carla Mitchell Armstrong as "Dr. Carlo Mitchell" in its opinion.
[6] Dr. Melancon wrote that Lewis was found to have a permanent impairment of twenty percent to his upper extremity and permanent limitations of no overhead work or heavy lifting over twenty-five pounds. On Lewis's job requirements form, it was noted lifting is "occasionally" required (6-33% of the time per day).
[7] Mississippi Code Annotated section 25-11-113 states, in pertinent part, "the medical board after an evaluation of medical evidence that may or may not include an actual physical examination by the medical board, shall certify that the member is mentally or physically incapacitated for the further performance of duty, that such incapacity is likely to be permanent, and that the member should be retired." The medical board shall apply the definition of "disability" as: "the inability to perform the usual duties of employment or the incapacity to perform such lesser duties, if any, as the employer, in its discretion, may assign without material reduction in compensation. . . ." Miss.Code Ann. § 25-11-113 (Rev.2003).