942 So.2d 259 (2006)
PUBLIC EMPLOYEES' RETIREMENT SYSTEM, Appellant,
v.
Donald W. BISHOP, Appellee.
No. 2005-CC-00931-COA.
Court of Appeals of Mississippi.
November 7, 2006.
*260 Office of the Attorney General by Mary Margaret Bowers, attorney for appellant.
Ronald D. Michael, Billy Bronson Tabler, Booneville, attorneys for appellee.
Before LEE, P.J., CHANDLER and ROBERTS, JJ.
CHANDLER, J., for the Court.
¶ 1. On September 17, 1999, Donald W. Bishop applied for disability benefits from the Public Employees' Retirement System (PERS). PERS denied Bishop's claim and Bishop filed a notice of appeal with the PERS Disability Appeals Committee. The committee heard testimony, reviewed the evidence, and made a recommendation to the PERS Board of Trustees that the Board deny Bishop's request. The Board adopted the committee's recommendation and entered an order denying benefits. Bishop appealed to the Circuit Court of Hinds County, which reversed the order of PERS Board of Trustees. The circuit court held that the Board's decision was arbitrary and capricious and was not supported by substantial evidence. PERS appeals, asserting one issue:
I. DID THE CIRCUIT COURT ERR IN FINDING THAT PERS ACTED ARBITRARILY AND CAPRICIOUSLY IN DENYING BISHOP'S APPLICATION FOR DISABILITY BENEFITS?
¶ 2. Finding no error, we affirm.

FACTS
¶ 3. Prior to his disability, Bishop was employed as a Carpenter II with Mississippi State University for approximately nine and a half years. As a carpenter, Bishop was required to maintain, repair, replace, alter, or fabricate a wide variety of structural systems using numerous materials, tools and methods. His duties as a carpenter required some heavy lifting and strenuous activities.
*261 ¶ 4. In 1994, Bishop began to suffer from pain in his elbows, legs, and neck. In 1996 and 1997, Bishop notified Dr. Mike Mabry of his pain. Bishop contends that he was able to continue working for approximately five years thereafter because of the aid of his co-workers and the flexibility of his supervisor. On May 17, 1999, Bishop terminated his employment with Mississippi State University, alleging that he was not physically capable of performing his job duties. Mississippi State University did not offer alternative employment nor did it offer lesser duties in the same position or an alternate position.
¶ 5. On August 23, 1999, Bishop visited Ochsner Clinic in New Orleans. At Ochsner Clinic, Bishop was treated by a rheumatologist, Dr. Jamie Bustamente. Dr. Bustamente determined that Bishop did not have a rheumatoid diagnosis and referred Bishop to Dr. Jeanette Salone, also a physician at Ochsner Clinic.
¶ 6. On August 23, 1999, Dr. Salone diagnosed Bishop with chronic fibromyalgia, diffuse myofascial disease, and chronic depression. Dr. Salone opined that Bishop's disability was permanent and he would require an indefinite amount of treatment. Although Dr. Salone noted that Bishop could not work, she opined that Bishop needed to undergo a Functional Capacity Exam (FCE) for her to make a final determination. Bishop chose not to undergo the FCE because his insurance did not cover the exam. On September 2, 1999, Dr. Salone released Bishop as a patient because Bishop indicated it was too expensive to drive back and forth to New Orleans for exams. After Dr. Salone released Bishop, she indicated that Bishop could return to work if he chose to do so. Dr. Salone also recommended that Bishop see a physician in Mississippi. Dr. Salone's notes state that some objective evidence of Bishop's abilities was necessary to make a determination of whether Bishop was permanently disabled and whether he could be gainfully employed.
¶ 7. In Mississippi, Bishop went to Dr. Everett McKibben for treatment. On August 27, 1999, Dr. McKibben opined that Bishop needed to lose weight, exercise, decrease alcohol consumption, and obtain treatment for depression. Dr. McKibben also noted that, although Bishop may need a vacation, there was no evidence to show that Bishop was totally or permanently disabled. Dr. McKibben did not conduct any tests. However, Dr. McKibben indicated that Bishop had degenerative joint disease and had a negative rheumatory work-up. Dr. McKibben referred Bishop to Dr. Laura Gray.
¶ 8. On September 13, 1999, Dr. Gray first saw Bishop. Dr. Gray performed lab work, x-rays and examinations. Bishop had several follow-up appointments with Dr. Gray. Dr. Gray opined that Bishop's condition would not improve and he would be permanently disabled.
¶ 9. On September 17, 1999, PERS received Bishop's request for disability benefits. PERS also received a Form 6B, an employer's statement of job requirements, from Bishop's supervisor, John Warner. The form stated:
Don cannot grip hand tools or power tools needed to perform his duties. He cannot lift or carry building materials used daily in the process of performing his duties. Don cannot climb ladders or scaffolds which is required daily in the process of performing his duties. Don is not able to help with the installation of new roofs or with the repairs of other roofs because of the kneeling, squatting and bending required. Don cannot form, pour or finish concrete because of the kneeling, squatting and bending required.
*262 Warner also stated that Bishop was motivated to perform the duties required of him although he was unable to do so.
¶ 10. After review of Bishop's application, PERS deferred its decision to obtain a FCE. On November 29, 1999, Bishop underwent a FCE under the supervision of Julie Walker, occupational therapist, at Methodist Rehabilitation Center. The FCE recommendations stated:
[t]rue abilities and limitations are difficult to determine as the patient was simply self limited by complaints of pain in numerous body parts. . . . The patient is functioning at restricted light/medium level of work, however, it is felt that he is capable of more. This evaluation represents what the patient was willing to do and not physiological maximum as this was not observed during the evaluation.
However, the FCE noted that Bishop "demonstrates significant pain behaviors during testing such as grunting, grimacing and very jumpy during physical assessment." The FCE stated that Bishop "teared up on two occasions" during the exam. After reviewing the medical documentation, on December 30, 1999, PERS denied Bishop's claim.
¶ 11. Bishop appealed the PERS decision on April 19, 2000, and additional medical documentation was submitted. The evidence was scheduled to be reviewed in August of 2000 and an appeal hearing date was scheduled for November 13, 2000. On August 24, 2000, Judge Mark Dawson, an administrative law judge for the Social Security Administration, found that Bishop was disabled. Judge Dawson stated that Bishop was unable to perform the past work because he had severe impairments including fibromyalgia, cervical, thoracic, lumbar degenerative changes, exogenous obesity and poorly controlled hypertension. Judge Dawson held "there are no jobs existing in significant numbers in the national economy which he can perform."
¶ 12. On November 13, 2000, an appeals hearing was held before the PERS Disability Appeals Committee. At the hearing, Bishop testified that he enjoyed his employment; however, it was very physical work. Bishop described his medical problems including physical pain, flu-like symptoms, weakness in his hands and knees, physical limitations at work, abnormal sleep patterns and excessive snoring.
¶ 13. After the hearing, the PERS Disability Appeals Committee submitted a proposed statement of facts and conclusions of law. The statement of facts stated that the medical documentation was contradictory. The statement opined that fibromyalgia was "the subject of much debate in the medical community" and was difficult to assess. The statement of facts concluded that there was no objective medical evidence that Bishop's diagnosis of fibromyalgia rendered him disabled and there was no indication as to what extent Bishop's depression affected his ability to perform his job.
¶ 14. The Disability Appeals Committee recommended to PERS that Bishop's benefits be denied. The PERS Board of Trustees adopted the recommendation of the Disability Appeals Committee. Per the Board's order of December 12, 2000, Bishop's benefits were denied and Bishop was determined not to be permanently disabled according to Mississippi Code Annotated section 25-11-113 (Rev.2003).
¶ 15. On January 11, 2001, Bishop filed his notice of appeal in the First Judicial District of Hinds County. The court held that "the decision of the Board and the Disability Appeals Committee of PERS was not supported by substantial evidence, was arbitrary and capricious, and should *263 be reversed and rendered." The court stated:
[i]n the instant case, the record reflects that Mr. Bishop's examining physicians, Drs. McKibben and Salone, indicated that additional evidence was needed to determine whether Mr. Bishop was permanently disabled. However, the Court finds that there is substantial evidence that indicates otherwise. Dr. Salone performed an examination on Mr. Bishop August 23, 1999 and rated him a 77% on a pain severity test. Because of Mr. Bishop's high level of pain, Mr. Bishop admitted to Dr. Salone that he stays in bed four out of seven days of the week. In addition, Dr. Salone diagnosed Mr. Bishop with moderate to severe chronic fibromyalgia and major to severe depression. Dr. McKibben performed an evaluation of Mr. Bishop on August 27, 1999 to determine disability. Although Dr. McKibben found no evidence that Mr. Bishop was totally or permanently disabled, he acknowledged that degenerative joint disease was present. Lastly, Dr. Gray submitted a letter to PERS recommending Mr. Bishop apply for disability due to the fact that in her professional opinion, Mr. Bishop's medical condition would not improve. Dr. Gray determined that Mr. Bishop is unable to perform the job duties required of him as a Carpenter II at Mississippi State University. Mr. Bishop meets the definition of disabled as defined by § 25-11-113 of the MS Code of 1942.
Aggrieved by the circuit court's decision, PERS appealed.

STANDARD OF REVIEW
¶ 16. "PERS is a state entity designed to provide state employees with alternative disability and retirement income that is accorded to others under the Social Security Act." Pub. Employees' Ret. Sys. v. Dishmon, 797 So.2d 888, 891(10) (Miss.2001) (citing Miss.Code Ann. § 25-11-3 (Rev.1999)). Employees of the State of Mississippi are entitled to disability retirement benefits if they meet the requirements stated in Mississippi Code Annotated section 25-11-113. Id. at (4). Under Mississippi Code Annotated section 25-11-113:
any active member in state service who has at least four years of membership service credit may be retired by the board of trustees . . . provided that the medical board, after a medical examination, shall certify that the member is mentally or physically incapacitated for the further performance of duty, that such incapacity is likely to be permanent, and that the member should be retired.
Miss.Code Ann. § 25-11-113(1)(a) (Rev. 1999).
¶ 17. The statute dictates standards by which a person may be determined disabled. A person may be disabled when he is unable "to perform the usual duties of employment." Id. The employee must also be unable "to perform such lesser duties, if any, as the employer . . . may assign without material reduction in compensation." Id. Finally, the employee seeking benefits must be unable "to perform the duties of any employment covered by the PERS that is actually offered and is within the same general territorial work area, without material reduction in compensation." Id.
¶ 18. There is a rebuttable presumption which favors the agency's decision and the challenging party has the burden of proving the contrary. Dishmon, 797 So.2d at 891(9). "Neither this Court nor the circuit court is entitled to substitute its own judgment for that of PERS, nor may we re-weigh the facts of the case." Purnell v. Pub. Employees' Ret. Sys., 894 *264 So.2d 597, 601(20) (Miss.Ct.App.2004) (citing Dishmon, 797 So.2d at 891(9)). Once PERS has made a decision regarding the application of disability benefits, the decision shall not be disturbed unless it is unsupported by substantial evidence; is arbitrary and capricious; is beyond the agency's scope or powers; or the decision violates the constitutional or statutory rights of the aggrieved party. Fulce v. Pub. Employees Ret. Sys., 759 So.2d 401(6) (Miss.2000).

LAW AND ANALYSIS
I. DID THE CIRCUIT COURT ERR IN FINDING THAT PERS ACTED ARBITRARILY AND CAPRICIOUSLY IN DENYING BISHOP'S APPLICATION FOR DISABILITY BENEFITS?
¶ 19. PERS contends that the decision rendered by the PERS Board was based upon substantial evidence and, therefore, should be reinstated. Bishop claims that the ruling of the circuit court should be affirmed because there was not substantial evidence to support the Board's decision.
¶ 20. "If an administrative agency's decision is not based on substantial evidence, it necessarily follows that the decision is arbitrary and capricious." Pub. Employees' Ret. Sys. v. Marquez, 774 So.2d 421, 430(35) (Miss.2000) (citing Miss. State Dep't of Health v. Natchez Community Hosp., 743 So.2d 973, 977(13) (Miss.1999)). Substantial evidence is "that which provides an adequate basis of fact from which the fact in issue can be reasonably inferred." Dishmon, 797 So.2d at 892(13). Substantial evidence has been defined as "such relevant evidence as reasonable minds might accept as adequate to support a conclusion." Marquez, 774 So.2d at 425(13). "The question here is not whether there was evidence in support of [Bishop's] disability, but whether there was substantial evidence to support the finding of the administrative agency." Dishmon, 797 So.2d at 892(12).
¶ 21. PERS correctly observes that "determining whether an individual is permanently disabled is better left to physicians, not judges." Pub. Employees' Ret. Sys. v. Howard, 905 So.2d 1279, 1287(23) (Miss.2005). Certainly, PERS has the discretion to determine which documents garner more weight than others. Byrd v. Pub. Employees' Ret. Sys., 774 So.2d 434, 438(15) (Miss.2000). However, while this Court performs limited appellate review, "it is not relegated to wearing blinders." Miss. State Bd. of Exam'rs for Social Workers and Marriage and Family Therapists v. Anderson, 757 So.2d 1079, 1084(15) (Miss.Ct.App.2000).
¶ 22. Here, PERS's decision to deny benefits is not supported by substantial evidence. Bishop underwent a FCE at PERS's request. The results of the FCE and the opinion of Dr. Bustamente indicated that further information was needed to determine whether Bishop was permanently disabled. These inconclusive medical opinions were not substantial evidence to support PERS's decision.
¶ 23. The only other evidence which supports PERS's ruling is the opinion of Dr. McKibben. The Disability Appeals Committee noted that "Dr. Everett McKibben submitted a Form 7 in which he recognizes degenerative disk disease, but indicates Mr. Bishop has no rheumatologic abnormalities of note, and no evidence to support permanent disability from employment." The committee failed to note that Dr. McKibben did not fill out any of the relevant portions of Form 7. Of the four sections on Form 7, Dr. McKibben only completed section 1, which was history of disability. In section 1, Dr. McKibben *265 briefly noted "[h]e has degenerative joint diseasehas a negative Rheumatology work-up in Ochsner ClinicI agree with Dr. Bustamente therehe needs [weight] loss, exercise, treatment of depression, and decreased alcohol consumptionhe might need a vacation but I see no evidence that he is totally or permanently disabled." Dr. McKibben failed to complete sections II through IV which related to physical examination, diagnosis, and conclusion. Additionally, Dr. McKibben did not conduct any tests on Bishop. Rather, Dr. McKibben referred Bishop to Dr. Gray for further evaluation. Dr. McKibben's opinion is not substantial evidence when considered along with the other objective medical evidence presented.
¶ 24. Although the results of the FCE were inconclusive, the FCE report noted that Bishop "demonstrates significant pain behaviors during testing." In its recommendation to deny benefits, the committee notes that Dr. Salone claimed additional evidence was needed to determine if Bishop could be gainfully employed. However, on August 23, 1999, Dr. Salone stated that Bishop's disability was permanent and he would require an indefinite amount of treatment. Dr. Salone diagnosed Bishop with diffuse myofascial disease, chronic depression and chronic fibromyalgia.
¶ 25. The committee stated that "[f]ibromyalgia is the subject of much debate in the medical community." The committee opined, because fibromyalgia is difficult to assess, "such cases must be undertaken on a case-by-case basis." Although the committee noted that Dr. Gray determined "Mr. Bishop is permanently disabled due to fibromyalgia and depression," they contrarily concluded that there was no evidence that Bishop's diagnosis of fibromyalgia rendered him disabled.
¶ 26. The rationale for PERS's decision was vague. After reciting the facts, the committee's recommendation concluded that "the Committee finds no objective medical evidence that Mr. Bishop's diagnosis of fibromyalgia renders him disabled from his position. . . ." In McGowan v. Miss. State Oil & Gas Bd., 604 So.2d 312, 322 (Miss.1992), the court required administrative agencies to "say at least minimally why they do what they do so someone can see whether it be arbitrary and capricious." In McGowan, the court "emphasized the need for understanding why an agency rules in a certain way in order to determine whether the Board acted arbitrarily and capriciously and whether substantial evidence undergirds its actions." Marquez 774 So.2d at 429(30).
¶ 27. As stated above, substantial evidence has been defined as "such relevant evidence as reasonable minds might accept as adequate to support a conclusion." Id. at (13). In support of its conclusion, PERS has noted only that Bishop lacks sufficient objective medical evidence. In light of the objective diagnoses made by treating physicians, PERS's conclusion is not substantiated by the record. Therefore, this Court affirms the judgment of the circuit court reversing PERS's denial of benefits.
¶ 28. THE JUDGMENT OF THE CIRCUIT COURT OF THE FIRST JUDICIAL DISTRICT OF HINDS COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., SOUTHWICK, IRVING, GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ., CONCUR.